990 A.2d 1048

Sylvester L. PROCTOR, et ux.

v.

**WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY.**

Misc. No. 1 Sept.Term, 2009.

Court of Appeals of Maryland.

March 12, 2010.

692

694

696

Andrew H. Baida (Caroline L. Hecker of Rosenberg, Martin, Greenberg, LLP, Baltimore, MD; John B. Low of Law Offices of John B. Low, P.A., Temple Hills, MD), on brief, for Appellants.

Gerard J. Stief, Senior Associate Gen. Counsel (Carol B. O'Keeffe, Gen. Counsel, Mark F. Sullivan, Deputy Gen. Counsel, and Nicholas S. Nunzio, Jr., Asst. Gen. Counsel, Washington, DC), on brief, for Appellee.

Brief of the state of Maryland as Amicus Curiae: Douglas F. Gansler, Esquire Atty. Gen. of Maryland, William F. Brockman, Esquire, Deputy Sol. Gen., Baltimore, MD.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

GREENE, Judge.

We have before us questions of law certified by the United States District Court for the District of Maryland pursuant to the Maryland Uniform Certification of Questions of Law Act, Md.Code (1973, 2006 Repl.Vol.), § § 12–601 to 12–613 of the Courts and Judicial Proceedings Article and Maryland Rule 8–305. The District Court has asked us to determine whether

the waiver of sovereign immunity provision contained in Md. Code (1984, 2009 Repl.Vol.), § 12–104(a)(1) of the State Government Article applies to the Washington Metropolitan Area Transit Authority ("WMATA"), notwithstanding the broad waiver of sovereign immunity provision contained in § 80 of the WMATA Compact. We shall hold that § 12–104 of the State Government Article does not apply to actions filed against WMATA. The District Court also has asked us to determine whether the cap on noneconomic damages contained in Md.Code (1973, 2006 Repl.Vol.), § 11–108(b) of the Courts and Judicial Proceedings Article or our decision in *Oaks v. Connors,* 339 Md. 24, 660 A.2d 423 (1995), applies to civil actions filed against WMATA in light of the broad waiver of sovereign immunity contained in § 80 of the WMATA Compact. We shall hold that both § 11–108(b) of the Courts and Judicial Proceedings Article and our holding in *Oaks* apply to actions against WMATA.

We adopt the facts of the case as set forth by the District Court in its Memorandum Opinion dated April 6, 2009:

On April 9, 2008, Sylvester Proctor was seriously injured when his motorcycle and a Washington Metropolitan Area Transit Authority ("WMATA") Metrobus collided at the intersection of Martin Luther King Highway and Parliament Place in Lanham, Maryland. Mr. Proctor and his wife Gloria ("Plaintiffs") filed their complaint for negligence and loss of consortium in the Circuit Court for Prince George's County, Maryland, on July 30, 2008. The complaint seeks $7 million in damages, in addition to costs. Defendant WMATA removed the complaint to [the District Court for the District of Maryland] on September 4, 2008.

On February 19, 2009, WMATA made an offer of judgment of $400,000 to Plaintiffs, which they rejected. Based upon the decision of the Court of Special Appeals of Maryland in *Wash. Metro. Area Transit Auth. v. Deschamps,* 183 Md.App. 279, 297, 961 A.2d 591, 601 (2008), which applied a cap on damages in actions involving the State (of which WMATA was held to be a unit), WMATA moved for summary judgment on March 18, 2009. WMATA contended

that, under Federal Rule of Civil Procedure 68, it had made an offer of the maximum amount of recovery allowable under the damages cap, Md.Code Ann., State Gov't § 12–104 (West 2009), which Plaintiffs rejected, thereby divesting [the District Court] of jurisdiction over the case. . . .

The outcome of WMATA's motion for summary judgment turns on (1) whether it is a "unit" of the state when suit is brought against it in, or removed to, federal court such that the $200,000 cap on liability contained in the Maryland Tort Claims Act should apply; and (2) whether the Maryland cap on non-economic damages applies.

As to the first issue, state and federal courts in Maryland, Virginia, and the District of Columbia have rendered inconsistent interpretations of this provision of Maryland's waiver of sovereign immunity. As it is axiomatic that the sovereign state may not be sued absent its express consent, this Court will accordingly defer to the Court of Appeals of Maryland for resolution of these important questions.

In light of the inconsistency in the interpretations of state and federal courts on this issue, the District Court certified the following questions of law to this Court:

1. Does the phrase "in a court of the State" contained in § 12–104(a)(1) of the State Government Article of the Maryland Code apply to civil actions originally filed in or removed to a United States District Court?

2. Do the terms "its units" contained in § 12–104(a)(1) of the State Government Article of the Maryland Code apply to the Washington Metropolitan Area Transit Authority ("WMATA") in light of the broad waiver of sovereign immunity contained in § 80 of the WMATA Compact, such that civil actions filed against WMATA are not subject to the $200,000 cap for an incident or occurrence?

3. Does the Maryland statutory cap on noneconomic damages contained in § 11–108(b) of the Courts and Judicial Proceedings Article of the Maryland Code apply to civil actions filed against WMATA in light of the broad waiver of

sovereign immunity contained in § 80 of the WMATA Compact?

4. Does Maryland decisional law, specifically *Oak[s]* v. *Connors,* 339 Md. 24, 35[, 660 A.2d 423] (1995), apply to preclude a recovery by both spouses for a loss of consortium claim brought against WMATA in light of the broad waiver of sovereign immunity contained in § 80 of the WMATA Compact?

Md.Code (1973, 2006 Repl.Vol.), § 12–604 of the Courts and Judicial Proceedings Article states that "[t]he Court of Appeals ... may reformulate a question of law certified to it." Accordingly, we shall combine Questions One and Two into a single question: Does the waiver of sovereign immunity contained in Md.Code (1984, 2009 Repl.Vol.), § 12–104(a)(1) of the State Government Article, apply to WMATA, in light of the broad waiver of sovereign immunity contained in § 80 of the WMATA Compact?

## Power to Answer

Before we may answer the questions certified by the District Court, we must address the issue of this Court's power to answer the certified questions pursuant to Md.Code (1973, 2006 Repl.Vol.), § 12–603 of the Courts and Judicial Proceedings Article. Section 12–603 of the Courts and Judicial Proceedings Article states:

**Power to answer.** The Court of Appeals of this State may answer a question of law certified to it by a court of the United States ... if the answer may be determinative of an issue in pending litigation in the certifying court and there is *no controlling appellate decision,* constitutional provision, or statute of this State.

(Emphasis added.) WMATA challenged this Court's jurisdiction to respond to the certified questions in this case, arguing that the Court of Special Appeals' decision in *WMATA v. Deschamps,* 183 Md.App. 279, 961 A.2d 591 (2008), discussed in detail *infra,* is a "controlling appellate decision" as contem-

plated by § 12–603 of the Courts and Judicial Proceedings Article.

WMATA contends in this Court that our opinions and opinions of the Court of Special Appeals are "controlling appellate decisions." WMATA points out that, when the Legislature amended the existing certification statute and adopted the revised Uniform Certification of Questions of Law Act, Chapter 344 of the Acts of 1996, the wording of the statute changed from "controlling precedent in the Court of Appeals of this State" to "controlling appellate decision." This change, in WMATA's view, demonstrates the Legislature's intent to prevent this Court from accepting certified questions when the Court of Special Appeals has spoken on the issue. WMATA acknowledged at oral argument that, although this Court is the final arbiter of Maryland law, controversies must come before the Court of Appeals in a manner in which this Court has proper jurisdiction, which is lacking in this case. According to WMATA, the District Court's reticence about the approach taken by the Court of Special Appeals in *Deschamps*, 183 Md.App. 279, 961 A.2d 591, is insufficient to confer jurisdiction on this Court. WMATA also asserted at oral argument that, should this Court answer the certified questions, it will somehow undermine the precedential value of decisions of the Court of Special Appeals in the state's trial courts.

Proctor argues that, because there is no decision from this Court as the final arbiter on Maryland law, there is no controlling appellate decision on the issue presented with regard to the certified questions. According to Proctor, the Legislature's amendment to Maryland's Uniform Certification of Questions of Law Act, Chapter 344 of the Acts of 1996, was undertaken in an effort to bring the statute in line with the national model statute, which sought to bring uniformity to procedures governing certified questions. Proctor cites the Floor Report and the Bill Analysis of House Bill 1450, which point to the revisions in question, as examples of non-substantive changes made to clarify the statutory language. Proctor further maintains that the proper consideration of what is a

"controlling appellate decision" is a determination of whether the decision is controlling with regard to the federal courts, not Maryland state trial courts.

The cardinal rule of statutory interpretation "is to ascertain and effectuate the intent of the Legislature." *UMMSC v. Waldt,* 411 Md. 207, 223, 983 A.2d 112, 122 (2009) (quoting *Chow v. State,* 393 Md. 431, 443, 903 A.2d 388, 395 (2006)). The plain language of the statute provides the best insight into the Legislature's intent. *See id.* In this case, the question turns on the proper interpretation of the phrase "controlling appellate decision." This Court previously analyzed the language of § 12–603 of the Courts and Judicial Proceedings Article in *Piselli v. 75th Street Medical,* 371 Md. 188, 808 A.2d 508, 515–16 (2002). In *Piselli,* we considered a challenge to this Court's authority to answer a certified question, first by examining the language of § 12–603 of the Courts and Judicial Proceedings Article. We said:

> The reference to there being no appellate decision or enactments *of this State* indicates that our authority under § 12–603 is limited to questions of non-federal Maryland law. Such interpretation is also indicated by the use of the word *controlling.* This Court's decisions on questions of federal law are obviously not "controlling" with regard to federal courts or courts of other states.... Moreover, the report of the House Judiciary Committee on House Bill 1450, which became Ch. 344 of the Acts of 1996, contained in the file of the Department of Legislative Reference, indicates that, except for certain changes expressly enumerated by the Committee, the new version of the Maryland Uniform Certification of Questions of Law Act was intended to be substantively the same as the former version.... [T]he purpose of the Uniform Certification of Questions of Law Acts is to obtain authoritative decisions concerning the law of a particular *state* ... in order to assist federal courts ... and state appellate courts in other states in their decision making processes.

*Piselli,* 371 Md. at 201–02, 808 A.2d at 515 (emphasis in original).

■ Although *Piselli* does not address the issue in the present case directly, it is significant with respect to three points: 1) although the wording of § 12–603 changed from "controlling precedent in the Court of Appeals of this State" to "controlling appellate decision," *Piselli* points out that the change was not intended to be substantive; 2) in the context of answering certified questions, this Court's decisions on questions of state law are controlling, however, this Court's decisions on questions of federal law are not controlling; and 3) this Court's purpose in answering certified questions is to render an authoritative decision to assist the federal court or other state appellate court in their decision making process. *Id.* Certainly, the Court of Special Appeals speaks with authority on Maryland law. Its decisions, whether in unreported opinions as the law of the case or in reported opinions as precedent, must be followed by Maryland courts and administrative tribunals, in the absence of contrary decisions rendered by this Court. The effect of this Court's decisions or the Court of Special Appeals' decisions on Maryland courts and administrative tribunals is not, however, the relevant analysis when considering the Maryland Uniform Certification of Questions of Law Act, § 12–603 of the Courts and Judicial Proceedings Article. Rather, as *Piselli* suggests, the relevant analysis is the effect of this Court's decisions, as the final arbiter of Maryland law, on the decision making process in federal courts and courts of other states.

■■ In *Assicurazioni Generali, S.p.A. v. Neil,* 160 F.3d 997, 1002 (1998), the United States Court of Appeals for the Fourth Circuit analyzed the extent to which its interpretation of Maryland law is influenced by the decisions of Maryland appellate courts.

If . . . [a] holding were contained in a state statute or a decision of the state's highest court, the Maryland Court of Appeals, we would, absent extraordinary circumstances, be required to follow it. It is axiomatic that in determining

state law a federal court must look first and foremost to the law of the state's highest court, giving appropriate effect to all its implications. . . . Only when this inquiry proves unenlightening . . . should a federal court seek guidance from an intermediate state court.

When seeking such guidance we defer to a decision of the state's intermediate appellate court to a lesser degree than we do to a decision of the state's highest court. Nevertheless, we do defer. . . .

Thus, a federal court must "present" persuasive data when it chooses to ignore a decision of a state intermediate appellate court that is directly on point. What a federal court, sitting in diversity, cannot do is simply substitute its judgment for that of the state court.

Thus, when determining Maryland law, federal courts will look first to this Court, as the final arbiter of Maryland law. If this Court has not spoken on the issue, "an intermediate appellate state court . . . is a datum for ascertaining state law which is not to be disregarded by a federal court *unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886, 893 (1967) (quoting *West v. A.T. & T Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)) (emphasis in original). The decisions of intermediate appellate courts "should be 'attributed some weight . . . [but] the decision [is] not controlling . . .' where the highest court of the State has not spoken on the point." *Id.* (quoting *King v. Order of United Commercial Travelers,* 333 U.S. 153, 160–61, 68 S.Ct. 488, 492, 92 L.Ed. 608 (1948)).

■ *Assicurazioni Generali,* 160 F.3d at 1002, and *Bosch,* 387 U.S. at 465, 87 S.Ct. at 1782, 18 L.Ed.2d at 893, demonstrate that even if this Court were prohibited from answering the certified questions, the District Court could doubt the Court of Special Appeals' decision in *Deschamps* as long as the federal court explained convincingly why it surmised that this Court might rule differently. As we discuss *infra,* the

Court of Special Appeals reached a different result in *Deschamps*, 183 Md.App. at 298–99, 961 A.2d at 602–03, from the federal courts upon considering the same issue and from the Supreme Court of Virginia upon considering a similar issue. The decisions of courts in Virginia and the District of Columbia have particular significance in this case because WMATA is a multi-jurisdiction agency governed by a compact to which Virginia and the District of Columbia are parties. Accordingly, the decisions of courts in Virginia and the District of Columbia are highly persuasive regarding matters related to WMATA. Because the rationale of *Deschamps*, 183 Md.App. at 298–99, 961 A.2d at 602–03, is inconsistent with the reasoning of other courts from the other two WMATA-related jurisdictions, the District Court, quite reasonably in our view, had reservations about whether *Deschamps* was decided correctly. Further, the parties in *Deschamps* did not seek review in this Court. The fact that this Court did not have the opportunity to review the Court of Special Appeals' reasoning in *Deschamps* strengthens the notion that *Deschamps* should not be deemed a "controlling authority" for purposes of the certification statute.

The purpose of the Maryland Uniform Certification of Questions Act is "to promote the *widest possible use* of the certification process in order to promote judicial economy and the proper application of [Maryland]'s law in a foreign forum." UNIFORM CERTIFICATION OF QUESTIONS OF LAW ACT § 3 cmt. (1995) (emphasis added). "Certification is a wonderful device for getting foreign law interpreted correctly . . . [C]ertification helps to achieve uniformity and should be used more often." RICHMAN & REYNOLDS, UNDERSTANDING CONFLICT OF LAWS § 62[c] (3d ed. 2002). By permitting this Court to address questions of Maryland law that are unsettled, uncertain, or otherwise controversial in light of cases decided by other courts, certification "removes the need for judicial guesswork" on the part of the federal courts. RICHMAN & REYNOLDS, *supra*, § 105. Depriving this Court of jurisdiction over certified questions that it has not addressed in favor of decisions of the Court of Special Appeals, particularly in a case where the

correctness of the intermediate appellate court's decision is rationally placed in doubt, fails to promote the "widest possible use" of the certification process.

■ As the District Court noted in the Certification Order: There is considerable uncertainty as to the status of Maryland law as evidenced by the inability of the judges of the United States District Courts for the District of Maryland and the District of Columbia, the Supreme Court of Virginia, and the Maryland Court of Special Appeals to reach a single conclusion with respect to WMATA's waiver of sovereign immunity as it relates to state statutory liability caps. This Court has reservations concerning the approach taken by Maryland's intermediate appellate court in *Deschamps*, which appears to narrow the broad waiver of sovereign immunity contained in § 80 of the WMATA Compact, and the impact of this discordant interpretation as compared to the approaches taken by the Supreme Court of Virginia and two United States District Courts sitting in Maryland and the District of Columbia. *Thus, it is a question that is most appropriately answered by Maryland's highest court, a court that has never addressed the issue, rather than an individual United States District Judge.*

(Emphasis added.) The present case, in which the District Court expressed uncertainty as to the proper interpretation of Maryland law, typifies the situation contemplated by the drafters of the Uniform Certification of Questions of Law Act. It is illogical to interpret the Maryland Uniform Certification of Questions of Law Act in a way that prohibits this Court from answering the District Court's questions, contravening the statute's purpose. " 'We avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense.' " *Board of Ed. v. Zimmer–Rubert,* 409 Md. 200, 215, 973 A.2d 233, 242 (2009) (quoting *Walzer v. Osborne,* 395 Md. 563, 573, 911 A.2d 427, 432 (2006) (internal citations omitted)). Accordingly, we conclude that § 12–603 of the Courts and Judicial Proceedings Article permits this Court to answer the certified questions, despite the fact that the Court of Special

Appeals has spoken on the subject matter in a reported opinion.

**Questions One and Two (Reformulated): Does the waiver of sovereign immunity contained in § 12–104(a)(1) of the State Government Article of the Maryland Code apply to WMATA, in light of the broad waiver of sovereign immunity contained in § 80 of the WMATA Compact?**

 WMATA is a multi-jurisdiction agency established by an interstate compact between the State of Maryland, the Commonwealth of Virginia, and the District of Columbia ("the WMATA Compact"), the purpose of which is to plan, develop, finance, and operate a unified regional public transit system serving the greater Washington, D.C. area. Md.Code (1977, 2008 Repl.Vol.), § 10–204(2) of the Transportation Article. The General Assembly approved the WMATA Compact in 1965. Chapter 869 of the Laws of 1965. Currently, the Compact is codified in Md.Code (1977, 2008 Repl.Vol.), § 10–204 of the Transportation Article. Washington, D.C., Virginia, and the United States Congress, Pub.L. No. 89–774, 80 Stat. 1324 (Nov. 6, 1966), also approved the Compact. The District of Columbia and Virginia codified the Compact, respectively, in D.C.Code § 9–1107.01 (2001) and Va.Code, Compacts §§ 56–529 to 56–530 (2001). Although the WMATA Compact is codified as state law, interpretation of the terms of the Compact is a question of federal law. *See Cuyler v. Adams,* 449 U.S. 433, 438, 101 S.Ct. 703, 707, 66 L.Ed.2d 641, 648 (1981) ("Because congressional consent transforms an inter-state compact . . . into a law of the United States, . . . the construction of an interstate agreement sanctioned by Congress under the Compact Clause presents a federal question."). To answer the District Court's question, we will first consider whether WMATA, an inter-jurisdictional compact agency, is entitled to the same sovereign immunity as a unit of the State of Maryland. Next, we shall consider the extent to which the Maryland General Assembly has waived the State's sovereign immunity pursuant to the WMATA Compact and

the Maryland Tort Claims Act ("MTCA"). Finally, we shall analyze the interplay between the waivers of immunity contained in the WMATA Compact and the MTCA, and determine whether the provisions of the MTCA have been incorporated into WMATA as part of the substantive tort law of Maryland.

Unlike ordinary state agencies, inter-jurisdictional compact agencies such as WMATA do not enjoy sovereign immunity "absent some 'good reason to believe' that immunity was intended to be conferred upon them." *Smith v. WMATA*, 290 F.3d 201, 206 (4th Cir.2002) (internal citation omitted). If a state intends to confer its sovereign immunity onto an agency created under the Compact Clause, such as WMATA, the state must make its intent clear when structuring the agency. *Hess v. Port Authority Trans–Hudson Corp.*, 513 U.S. 30, 43–44, 115 S.Ct. 394, 402, 130 L.Ed.2d 245, 257 (1994). In the case of WMATA, the State of Maryland and the other signatory parties made their intent to confer sovereign immunity upon WMATA clear in the language of the Compact. Section 4 of the WMATA Compact specifically states that the signatories create WMATA "as an instrumentality and agency of each of the signatory parties."

> 4. **Washington Metropolitan Area Transit Authority.**
> There is hereby created, *as an instrumentality and agency of each of the signatory parties hereto,* the Washington Metropolitan Area Transit Authority which shall be a body corporate and politic, and which shall have the powers and duties granted herein and such additional powers as may hereafter be conferred upon it pursuant to law.

Md.Code (1977, 2008 Repl.Vol.), § 10–204(4) of the Transportation Article (emphasis added); *see also Lizzi v. Alexander,* 255 F.3d 128, 132 (4th Cir.2001) ("WMATA is a state agency, subject to all the benefits and liabilities of a state itself, including sovereign immunity. It does not matter that WMATA was created by an interstate compact, as opposed to being an agency of one state alone." (internal citation omitted)); *Morris v. WMATA,* 781 F.2d 218, 219 (D.C.Cir.1986) ("WMA-

TA's sovereign immunity exists because the signatories have successfully conferred their respective sovereign immunities upon it."); *Lizzi v. WMATA,* 156 Md.App. 1, 9, 845 A.2d 60, 65 (2003); *Maxwell v. Washington Transit,* 98 Md.App. 502, 514, 633 A.2d 924, 929 (1993) ("It is clear that each of the three signatories attempted to confer its sovereign immunity upon WMATA. We think they succeeded . . . ." (internal citations omitted)); *Wash. Metro. Area Transit Auth. v. Briggs,* 255 Va. 309, 497 S.E.2d 139, 141 (1998). By designating that WMATA is "an instrumentality and agency" of each signatory, the signatories have demonstrated their intent to grant to WMA-TA the same privileges the signatory grants to its other instrumentalities or agencies, including sovereign immunity. Thus, WMATA generally is accorded the same sovereign immunity as any other agency of the State of Maryland.

"In Maryland, this Court has 'long applied the doctrine of sovereign immunity in actions against the State.' " *Zimmer–Rubert,* 409 Md. at 211, 973 A.2d at 239 (quoting *ARA Health v. Dept. of Public Safety,* 344 Md. 85, 91, 685 A.2d 435, 438 (1996)). Sovereign immunity "is applicable not only to the State itself, but also to its agencies and instrumentalities, unless the General Assembly has waived the immunity either directly or by necessary implication." *Katz v. Washington Sub. San. Comm'n,* 284 Md. 503, 507–08, 397 A.2d 1027, 1030 (1979). If the State chooses, by legislative action, to waive its sovereign immunity, this Court strictly construes the waiver in favor of the State. *Zimmer–Rubert,* 409 Md. at 212, 973 A.2d at 240 ("As such, '[w]hile the General Assembly may waive sovereign immunity either directly or by necessary implication, this Court has emphasized that the dilution of the doctrine should not be accomplished by 'judicial fiat.' ' ") (quoting *ARA Health,* 344 Md. at 92, 685 A.2d at 438 (quoting *Dep't of Natural Resources v. Welsh,* 308 Md. 54, 59, 521 A.2d 313, 315 (1986))); *Lizzi,* 156 Md.App. at 9, 845 A.2d at 65.

Section 80 of the WMATA Compact makes a limited waiver of WMATA's sovereign immunity to actions in tort and contract.

**80. Liability for contracts and torts.**

The Authority shall be liable for its contracts and for its torts and those of its directors, officers, employees and agents committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. Nothing contained in this title shall be construed as a waiver by the District of Columbia, Maryland, Virginia and the counties and cities within the zone of any immunity from suit.

Md.Code (1977, 2008 Repl.Vol.), § 10–204(80) of the Transportation Article. The waiver of sovereign immunity contained in § 10–204(80) of the Transportation Article is read in conjunction with Md.Code (1977, 2008 Repl.Vol.), § 10–204(81) of the Transportation Article.

**81. Jurisdiction of the courts.**

The United States District Courts shall have original jurisdiction, concurrent with the courts of Maryland, Virginia and the District of Columbia, of all actions brought by or against the Authority.... Any such action initiated in a State or District of Columbia court shall be removable to the appropriate United States District Court....

*Id.* Thus, the notable features of WMATA's waiver of sovereign immunity are: 1) WMATA waives its sovereign immunity for torts arising out of proprietary functions, while retaining its immunity for torts arising out of governmental functions; 2) the exclusive remedy is a suit against WMATA, and suits against the State or local governments of the signatories are expressly prohibited; 3) the substance of the claim shall be governed by State law or the law of the District of Columbia; and 4) WMATA waives its Eleventh Amendment immunity to suit in federal court.

The General Assembly enacted the Maryland Tort Claims Act, Chapter 298 of the Laws of 1981, sixteen years after

approving the WMATA Compact. The purpose of the MTCA is to ensure that an individual who is injured by the tortious conduct of the State or state employees has a remedy for his or her injury. *See* Md.Code (1984, 2009 Repl.Vol.), § 12–102 of the State Government Article ("This subtitle shall be construed broadly to ensure that injured parties have a remedy."); *Condon v. State*, 332 Md. 481, 496, 632 A.2d 753, 758 (1993). Before the General Assembly enacted the MTCA "the State and its agencies could not be sued unless the General Assembly authorized suit and enabled State agencies to obtain funds necessary to satisfy judgments." *Condon*, 332 Md. at 492, 632 A.2d at 758; *Riviera v. PG County Health Dep't*, 102 Md.App. 456, 467, 649 A.2d 1212, 1217 (1994); *see Board v. John K. Ruff, Inc.*, 278 Md. 580, 366 A.2d 360 (1976) (discussing the limited waiver of sovereign immunity for actions against community colleges); *University of Maryland v. Maas*, 173 Md. 554, 197 A. 123 (1938) (discussing statutes permitting suits against the University of Maryland). For example, the General Assembly has waived the sovereign immunity of agencies of the State, or bodies that are considered to be part of the State for purposes of sovereign immunity, such as WMATA, by statute, on an individual basis. *E.g.*, Md.Code (1973, 2006 Repl.Vol.), § 5–518 of the Courts and Judicial Proceedings Article (waiving sovereign immunity of county school boards, which, although they are local agencies, are considered part of the State for purposes of sovereign immunity); Md.Code (1977, 2008 Repl.Vol.), § 7–702 of the Transportation Article (waiving sovereign immunity of the Maryland Transportation Administration).

In light of the existing waivers of sovereign immunity for specific instrumentalities or agencies of the State, the Legislature, upon enacting the MTCA, elected to limit its scope. The General Assembly outlined the scope of the MTCA in Md. Code (1984, 2009 Repl.Vol.), § 12–103 of the State Government Article:

**12–103. Scope of subtitle.**

*This subtitle does not:*

*(1) limit any other law that:*

*(i) waives the sovereign immunity of the State or the units of the State government in tort;* or

(ii) authorizes the State or its units to have insurance for tortious conduct;

(2) waive any right or defense of the State or its units, officials, or employees in an action in a court of the United States or any other state, including any defense that is available under the 11th Amendment to the United States Constitution; or

(3) apply to or waive any immunity of a bicounty unit, county, municipal corporation, or other political subdivision or any unit, official, or employee of any of those agencies or subdivisions.

(Emphasis added.) Section 12–103(1)(i) of the State Government Article demonstrates that the Legislature intended that the MTCA serve as a "gap-filler" to waive the immunity of State agencies in tort when no other statute expressly waived the agency's immunity. If such a statute is in place, the Legislature expressly stated that the MTCA shall not affect the existing waiver.

The Legislature then enacted a general waiver of immunity to tort actions against any agency for which there was no specific statute addressing waiver. The general waiver of immunity is contained in Md.Code (1984, 2009 Repl.Vol.), § 12–104 of the State Government Article.

**12–104. Waiver of immunity.**

(a) *In general.*—(1) Subject to the exclusions and limitations in this subtitle and notwithstanding any other provision of law, the immunity of the State and of its units is waived as to a tort action, in a court of the State, to the extent provided under paragraph (2) of this subsection.

(2) The liability of the State and its units may not exceed $200,000 to a single claimant for injuries arising from a single incident or occurrence.

(b) *Exclusions and limitations.*—Immunity is not waived under this section as described under § 5–522(a) of the Courts and Judicial Proceedings Article.

(c) *Payment of claims exceeding coverage.*—(1) The Treasurer may pay from the State Insurance Trust Fund all or part of that portion of a tort claim which exceeds the limitation on liability established under subsection (a)(2) of this section under the following conditions:

Md.Code (1973, 2006 Repl.Vol.), § 5–522(a) of the Courts and Judicial Proceedings Article states that § 12–104 of the State Government Article retains the State's immunity from, *inter alia,* punitive damages, interest before judgment, and "[a] claim by an individual arising from a single incident or occurrence that exceeds $200,000."[1] In summary, the notable features of the MTCA's waiver of sovereign immunity are: 1) the State waives its sovereign immunity to all tort actions, arising out of governmental, proprictary, or other functions, unless specifically excluded by § 5–522(a) of the Courts and Judicial Proceedings Article; 2) the exclusive remedy for recovery is to file a claim with the Treasurer pursuant to Md.Code (1984, 2009 Repl.Vol.), §§ 12–106 to 12–107 of the State Government Article, or institute an action in a Maryland state court upon denial by the Treasurer; 3) the State retains its immunity for damages arising out of a single claim or occurrence in excess of $200,000; 4) the State retains its Eleventh Amendment immunity to suit in federal court, and 5) the waiver contained in the MTCA does not affect other waivers made by the Legislature in other sections of the Code.

 The District Court asks us to determine the effect of the State's waiver of sovereign immunity in the MTCA on the State's previous waiver of immunity in the WMATA Compact, and determine to what extent, if any, the WMATA Compact's incorporation of "the law of the applicable signatory" in § 80 includes the provisions of the MTCA. In undertak-

---

1. Other sections of the MTCA address the individual immunity of State personnel, Md.Code (1984, 2009 Repl. Vol.), § 12–105 of the State Government Article, place limits on time and method of filing, Md.Code (1984, 2009 Repl.Vol.), § 12–106 of the State Government Article, and state the form and process of claims filed pursuant to MTCA, Md.Code (1984, 2009 Repl.Vol.), § § 12–107 to 12–108 of the State Government Article.

ing this task, we adhere to the relevant canons of statutory interpretation, outlined in *Bowen v. Annapolis*, 402 Md. 587, 613–14, 937 A.2d 242, 257–58 (2007). In *Bowen*, we said:

> The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology.
>
> In construing plain language, "[a] court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application." Statutory text "should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory." The plain language of a provision is not interpreted in isolation. Rather, we analyze the statutory scheme as a whole and attempt to harmonize provisions dealing with the same subject so that each may be given effect.
>
> If statutory language is unambiguous when construed according to its ordinary and everyday meaning, then we give effect to the statute as it is written. "If there is no ambiguity in that language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends; we do not need to resort to the various, and sometimes inconsistent, external rules of construction, for 'the Legislature is presumed to have meant what it said and said what it meant.' "

*Id.* (quoting *Kushell v. Department of Natural Resources*, 385 Md. 563, 576–78, 870 A.2d 186, 193–94 (2005) (internal citations omitted)). Further, when the language of a section of a statute is part of a larger statutory scheme, "it is axiomatic that the language of a provision is not interpreted in isolation; rather, we analyze the statutory scheme as a whole considering the 'purpose, aim, or policy of the enacting body,' and attempt to harmonize provisions dealing with the same subject so that each may be given effect." *Ray v. State*, 410 Md. 384, 405, 978 A.2d 736, 748 (2009) (quoting *Serio v. Baltimore*

*County,* 384 Md. 373, 390, 863 A.2d 952, 962 (2004); *Drew v. First Guar. Mortgage Corp.,* 379 Md. 318, 327, 842 A.2d 1, 6 (2003)). In addition to harmonizing the provisions within a single statutory scheme, "[w]here statutes relate to the same subject matter, and are not inconsistent with each other, they should be construed together and harmonized where consistent with their general object and scope." *Gwin v. MVA,* 385 Md. 440, 462, 869 A.2d 822, 834 (2005) (quoting *Bridges v. Nicely,* 304 Md. 1, 10, 497 A.2d 142, 146 (1985)). Thus, in this instance, we will consider the plain language of §§ 12–103 and 12–104 of the State Government Article within the larger scheme of the MTCA, and harmonize, if possible, the waiver of sovereign immunity contained in the MTCA with the waiver of sovereign immunity contained in the WMATA Compact.

Proctor cites the plain language of § 12–103(1) of the State Government Article as evidence that the MTCA does not apply to WMATA, as the MTCA "does not ... limit any other law that ... waives the sovereign immunity of the State or the units of the State government in tort." According to Proctor, the WMATA Compact, in waiving the WMATA's immunity, renders the MTCA inapplicable. Alternatively, Proctor argues that the WMATA Compact has the weight of federal law and, by its terms, cannot be altered by the State of Maryland without the express consent of the other signatories. According to Proctor, application of the MTCA and its waiver of immunity, which waives immunity for torts arising out of a broader variety of conduct than the WMATA Compact, has the effect of impermissibly modifying the waiver of immunity found in the WMATA Compact.

WMATA contends that this Court should adopt the Court of Special Appeals' holding in *Deschamps,* 183 Md.App. at 298–99, 961 A.2d at 602–03, that the limit on tort damages contained in § 12–104(a) of the State Government Article applies to WMATA as a "unit" of the State. In WMATA's view, the WMATA Compact's incorporation of Maryland law, in requiring the application of substantive law to determine what constitutes a proprietary tort by WMATA, includes any and all statutory caps on damages. WMATA characterizes the

$200,000 limit on damages arising out of any single claim or occurrence contained in the MTCA as a cap on damages, similar to the non-economic damages cap. Further, WMATA maintains that, as a "unit" of the State of Maryland, it is therefore entitled to avail itself of this "cap." Thus, according to WMATA, the application of the damages "cap" contained in the MTCA does not alter the waiver of sovereign immunity contained in the WMATA Compact, but rather limits the available remedy. In making this contention, WMATA further relies on the holding of the Court of Special Appeals in *Maxwell*, 98 Md.App. at 516, 633 A.2d at 930, that WMATA is entitled to the same broad immunity in State courts as any other State agency.

Other jurisdictions, as well as Maryland's Court of Special Appeals, have considered the effect of a general waiver of tort immunity by a State legislature on WMATA, in light of the WMATA Compact's incorporation of the substantive law of its signatories. We shall consider the reasoning employed by these courts before undertaking our own analysis. *See Haas v. Lockheed Martin*, 396 Md. 469, 481 and n. 10, 914 A.2d 735, 742 and n. 10 (2007) (noting that federal and foreign state court interpretations of statutes that are similar to Maryland statutes, though not binding on the decisions of this Court, are often a helpful reference).

The Supreme Court of Virginia considered the interplay between the Virginia Tort Claims Act, Va.Code § § 8.01–195.1 (2007), *et seq.*, and the WMATA Compact in *Briggs*, 255 Va. 309, 497 S.E.2d 139 (1998).[2] In *Briggs*, WMATA argued that the trial court should have reduced the jury verdict in Briggs'

---

2. Va.Code § 8.01–195.3 (2007) states that

... [t]he amount recoverable by any claimant shall not exceed (i) $25,000 for causes of action accruing prior to July 1, 1988, $75,000 for causes of action accruing on or after July 1, 1988, or $100,000 for causes of action accruing on or after July 1, 1993, or (ii) the maximum limits of any liability policy maintained to insure against such negligence or other tort, if such policy is in force at the time of the act or omission complained of, whichever is greater, exclusive of interests and costs.

favor to $75,000 to comport with the limit on tort liability contained in the Virginia Tort Claims Act. *Briggs,* 497 S.E.2d at 141. WMATA relied on the phrase "in accordance with the law of the applicable signatory," arguing that the WMATA Compact incorporated the Virginia Tort Claims Act's limitation on liability as part of the substantive law of Virginia. *Id.* The Virginia Supreme Court held that, although WMATA is an agency of the Virginia state government, "WMATA has expressly waived its right of sovereign immunity for torts committed by its employees. . . . Section 80 of the Compact does not contain any limitation on the amount of compensatory damages that a plaintiff may recover from WMATA, and § 80 does not mention or refer to the Virginia Tort Claims Act." *Id.* The Virginia Supreme Court concluded that

> § 80 does not incorporate the limitation on damages contained in the Virginia Tort Claims Act. We are of the opinion that this language means that the courts in the Commonwealth of Virginia must apply the substantive tort law governing the conduct of a director, officer, employee, or agent of WMATA who commits a tort while performing any proprietary function.

*Id.*

The United States District Court for the District of Maryland considered the issue presented in the certified question in *Lyons v. Wash. Metro. Area Transit Auth.,* 2003 WL 23305156, 2003 U.S. Dist. Lexis 24696 (D.Md. Dec. 26, 2003). In *Lyons,* WMATA advanced essentially the same argument as in the present case. *See Lyons,* 2003 WL 23305156 at *1, 2003 U.S. Dist. Lexis at *3–4. The District Court held that "although WMATA shares in the state [of Maryland]'s sovereign immunity as a general matter, the Maryland Tort Claims Act is not incorporated into WMATA's blanket waiver of sovereign immunity for harm caused by its employees' negligence in their performance of non-governmental functions." *Lyons,* 2003 WL 23305156 at *1, 2003 U.S. Dist. Lexis at *4 (internal citations omitted).

The United States District Court for the District of Columbia also considered the interplay between the MTCA and the WMATA Compact in *Wilson v. Wash. Metro. Area Transit Auth.*, 436 F.Supp.2d 1 (2006). In *Wilson*, again WMATA made the same argument that it makes in the present case, which is that the WMATA Compact's waiver of immunity incorporates the $200,000 limit on damages in the MTCA, § 12–104(a) of the State Government Article, as part of the "law of the applicable signatory." *Wilson*, 436 F.Supp.2d at 2. The District Court did not address whether the WMATA Compact incorporated the MTCA's limit on damages. Rather, the District Court, in a narrow holding, relied on the language in § 12–104(a) of the State Government Article limiting the State's waiver of sovereign immunity to cases brought "in a court of the State," holding that § 12–104(a) "does not apply to WMATA in federal courts because the language of the MTCA only waives the state's sovereign immunity with respect to cases in Maryland state courts." [3] *Wilson*, 436 F.Supp.2d at 3.

In *Deschamps*, 183 Md.App. at 298–99, 961 A.2d 591, the Court of Special Appeals, in considering the main issue presented in these certified questions, reached a different conclusion than the federal courts and the Virginia Supreme Court. In *Deschamps*, the intermediate appellate court acknowledged that § 10–204(80) of the Transportation Article retains WMATA's sovereign immunity "for any governmental functions that it performs, and although it does not enjoy absolute immunity for proprietary functions, it nevertheless 'has the even broader immunity a Maryland agency enjoys when suit is brought in Maryland courts.'" *Deschamps*, 183 Md.App. at 298, 961 A.2d at 602 (quoting *Maxwell*, 98 Md.App. at 516, 633 A.2d 924). The court then cited the MTCA's waiver of sovereign immunity in § 12–104 of the State Government Article, stating that "[o]ne facet of the immunity enjoyed by Maryland agencies is

---

**3.** We do not adopt the conclusion that Md.Code (1984, 2009 Repl.Vol.), § 12–104(a) of the State Government Article is only inapplicable to WMATA in federal court, as we will explain *infra*.

a cap on damages in actions involving the State." *Id.* The court then analyzed whether WMATA is a "unit" of the state as defined by the MTCA, arriving at the conclusion that WMATA is a unit of the state. *Id.* The court concluded that the trial court properly reduced Ms. Deschamps' award to comply with the $200,000 limit on damages contained in § 12–104(a)(2). *Deschamps,* 183 Md.App. at 299, 961 A.2d at 603.

We disagree with the intermediate appellate court's analysis of the interplay between the WMATA Compact and the MTCA because the court failed to consider the effect of § 12–103 of the State Government Article on the sovereign immunity provisions contained in § 12–104(a) of the State Government Article. Merely acknowledging that WMATA is a "unit" of the State entitled to sovereign immunity does not address whether WMATA is subject to the terms of the waiver of sovereign immunity contained in the MTCA. It is clear that the MTCA does not apply to every entity that is considered a "unit" of the State of Maryland for purposes of sovereign immunity. *See, e.g., Zimmer–Rubert,* 409 Md. at 215–16, 973 A.2d at 242 (noting that county school boards are state agencies for purposes of sovereign immunity and discussing the waiver of the immunity of school boards contained in Md.Code (1973, 2006 Repl.Vol.), § 5–518(c) of the Courts and Judicial Proceedings Article); *Collier v. Nesbitt,* 79 Md. App. 729, 733, 558 A.2d 1242,1244 (1989) (holding that the provisions of the MTCA do not apply to actions filed against the Maryland Transit Administration).

For example, the General Assembly waived the Maryland Transit Administration's sovereign immunity for contracts and torts in Md.Code, § 7–702 of the Transportation Article. Section 7–702(b) provides that "[t]he exclusive remedy for a breach of contract or a tort committed by the Administration, its officers, agents, or employees is a suit against the Administration." In considering whether the notice requirements of the MTCA applied to claims against MTA, the intermediate appellate court held that "suit, governed by § 7–702 of the Transportation Article, is the appellant's exclusive remedy

against the MTA. *Section 12–106 notice to the Treasurer is mandatory only for actions under the Tort Claims Act. The instant case is not such an action." Collier,* 79 Md.App. at 733, 558 A.2d at 1243–44 (emphasis added). The intermediate appellate court in *Collier* continued:

We perceive no conflict between § 12–106 and § 7–702, nor do we perceive a pre-emption issue. *Rather, we see two statutes each with a different focus. While both effect a waiver of sovereign immunity, they do so to varied extents.* Section 7–702 of the Transportation Article pertains only to torts committed by MTA personnel in the course of their employment. By contrast, the Tort Claims Act is a gap-filler provision authorizing suits where *no specific sovereign immunity waiver otherwise exists.*

This is evident in the wording of the Torts Claims Act. Section 12–102 of the State Government Article provides, "This subtitle shall be construed broadly, to ensure that injured parties have a remedy." *Moreover, § 12–103 states, "This subtitle does not limit any other law that waives sovereign immunity of the State or the units of the State government in tort . . . ."*

The Tort Claims Act was codified four years after the MTA sovereign immunity waiver. The legislature is presumed to act with full knowledge of existing laws. Had the General Assembly intended to modify the operation of the Transportation Article, § 7–702, it would have done so.

*Collier,* 79 Md.App. at 733–34, 558 A.2d at 1244 (emphasis added) (internal citations omitted).

*Collier* demonstrates that the MTCA is not a series of individual provisions that are read into existing statutory schemes dealing with the waiver of sovereign immunity. Rather, the MTCA is itself a statutory scheme, to be read and applied as a whole when no other preexisting waiver of sovereign immunity exists. In *Collier,* 79 Md.App. at 733–34, 558 A.2d at 1244, the Court of Special Appeals took the view that § 12–103 of the State Government Article demonstrates the Legislature's intent that the provisions of the MTCA only

apply as a gap-filler when the Legislature has not otherwise waived the agency's immunity in tort. The intermediate appellate court departed from this interpretation in *Deschamps*, however. The Court of Special Appeals, with the exception of its decision in *Deschamps*, 183 Md.App. at 298–99, 961 A.2d at 602–03, has declined to apply the individual provisions of the MTCA in a piecemeal fashion. *See, e.g., State v. Card*, 104 Md.App. 439, 446–47, 656 A.2d 400, 404 (1995); *Harris v. Gross*, 87 Md.App. 764, 768–69, 591 A.2d 575, 577 (1991); *Collier*, 79 Md.App. at 733–34, 558 A.2d at 1243–44. Rather, the court, until *Deschamps*, had taken the view that "[t]he various sections of the Tort Claims Act have to be read together, in harmony." *State v. Card*, 104 Md.App. 439, 446, 656 A.2d 400, 404.

For example, in *Harris*, 87 Md.App. at 768–69, 591 A.2d at 577, the intermediate appellate court declined to apply individual portions of the MTCA to an independent legislative waiver of sovereign immunity. Harris filed suit pursuant to § 17–107(b) of the Transportation Article, which prohibits "[a]n owner or lessee of any motor vehicle registered under Title 13 ... [from] rais[ing] the defense of sovereign or governmental immunity, to the extent of benefits provided by ... § 17–103 of [the Transportation Article]...." *Harris*, 87 Md.App. at 768, 591 A.2d at 577. The intermediate appellate court held that § 17–107(b) of the Transportation Article established a more limited waiver of the State's sovereign immunity, up to the statutory minimum security requirements for state-owned motor vehicles, without the notice requirements mandated by the MTCA. *Id.* Accordingly, "suit may have been brought pursuant to former § 17–107(b) independently of the requirements of the Tort Claims Act." *Harris*, 87 Md.App. at 769, 591 A.2d at 578. The court recognized that the provisions of the MTCA are in addition to, and not in limitation of, other laws waiving the immunity of the State in tort actions, and thus MTCA's time limits were not applicable to actions filed pursuant to 17–107(b) of the Transportation Article. *Id.*

It is clear from the plain wording of § 12–103(1) of the State Government Article and the opinions of the interme-

diate appellate court in *Collier* and *Harris* that, when the Legislature has chosen to waive the sovereign immunity of a State agency or instrumentality by statute, the terms of the statute specific to the agency or instrumentality apply to the waiver, not the terms of the MTCA. In our view, the MTCA applies, in its entirety, as a gap-filler when no other waiver of sovereign immunity is in place. In the present case, the Legislature unambiguously waived WMATA's sovereign immunity by approving the WMATA Compact, contained in § 10–204(80) of the Transportation Article. That waiver specifies the extent to which WMATA is subject to tort claims, and states the process by which such claims may be made. Accordingly, the waiver contained in § 10–204(80) of the Transportation Article states the extent of WMATA's waiver of sovereign immunity. The MTCA does not apply based on its plain language, specifically, § 12–103(1) of the State Government Article, when read together with other relevant provisions of the Transportation Article. Thus, we expressly overrule the Court of Special Appeals' holding in *Deschamps,* 183 Md.App. at 298–99, 961 A.2d at 602–03, that the MTCA applies to WMATA as a "unit" of the State and as a limitation on its sovereign immunity.[4]

We now consider whether the WMATA Compact, by incorporating the substantive tort law of Maryland, also incorporates the MTCA's $200,000 limit on damages arising out of a claim or occurrence. WMATA states correctly that statutory caps on damages are substantive tort law which may be incorporated into the WMATA Compact by § 10–204(80) of the Transportation Article. WMATA, however, misinterprets the nature of the $200,000 limit on the payment of damages by comparing the limit to Maryland's statutory noneconomic

---

**4.** We disagree with WMATA's interpretation of the intermediate appellate court's decision in *Maxwell v. Washington Transit,* 98 Md.App. 502, 516, 633 A.2d 924, 929 (1993). Rather, in our view, *Maxwell* stands for the proposition that WMATA is entitled to the same sovereign immunity as the State, and, thus, cannot be sued unless expressly permitted by the provisions of the WMATA Compact.

damages cap that applies to all tort claims, discussed *infra.* Although the MTCA's $200,000 damages limit is similar functionally to a cap on damages, it is more accurately described as a limit on the State's waiver of sovereign immunity. WMATA's argument seems to be that the WMATA Compact's waiver of immunity is somehow incomplete because it is silent on the issue of a "cap," and thus, the "cap" contained in the MTCA applies as part of the substantive tort law of Maryland. We disagree. Rather, the $200,000 limit is the maximum amount of damages to which the Legislature waived the State's sovereign immunity in cases where the "catch-all" waiver provision applies. Thus, the limit on damages contained in § 12–104(a) of the State Government Article is a term of the State's waiver of sovereign immunity, not a cap on damages, and does not apply to WMATA under the plain language of § 12–103(1) of the State Government Article ("This subtitle does not limit any other law that waives the sovereign immunity of the State or the units of the State government in tort.").

Even if we were inclined to apply the State's damages limit on its waiver of sovereign immunity contained in the MTCA to WMATA, the plain language of the WMATA Compact precludes such a result from being reached unilaterally by a single signatory. Md.Code (1977, 2008 Repl.Vol.), § 10–204(84) of the Transportation Article states:

> **84. Amendments and supplements.** Amendments and supplements to this title to implement the purposes thereof may be adopted by legislative action of any of the Signatory parties concurred in by all of the others. When one Signatory adopts an amendment or supplement to an existing section of the Compact, that amendment or supplement shall not be immediately effective, and *the previously enacted provision or provisions shall remain in effect in each jurisdiction until the amendment or supplement is approved by the other Signatories and is consented to by Congress.*

(Emphasis added.) Considering the plain language of this section, if the Maryland Legislature were to attempt to modify

the extent to which WMATA has waived its sovereign immunity, such a modification would have no effect unless it were approved by all signatories and Congress. The WMATA Compact, as an inter-jurisdictional compact approved by Congress, is equivalent to federal law, and thus cannot be overridden by an act of the Maryland Legislature. *See Cuyler,* 449 U.S. at 438, 101 S.Ct. at 707, 66 L.Ed.2d at 648; *see also* Md. Declaration of Rights, Art. 2 ("The Constitution of the United States, and Laws ... are, and shall be the Supreme Law of the State; and the Judges of this State, and all the People of this State, are, and shall be bound thereby; anything in the ... Law of this State to the contrary notwithstanding."). Accordingly, the limit on the State's waiver of sovereign immunity as provided for in the MTCA has no effect on the waiver of WMATA's sovereign immunity contained in the WMATA Compact.

Assuming *arguendo* that the $200,000 limit on damages contained in Md.Code. § 12–104(a) of the State Government Article were a statutory cap on damages and not a limit on the State's waiver of sovereign immunity, the limit still would not apply to WMATA. As discussed *supra,* the MTCA is a statutory scheme to be read as a whole, not as a series of individual provisions that stand alone. The District Court's decision in *Wilson,* 436 F.Supp.2d at 3, demonstrates why individual sections of the MTCA do not stand alone. The plain language of the § 12–104(a) of the State Government Article states that claims under the MTCA may only be made "in a court of the State." Accordingly, the *Wilson* court interpreted correctly the phrase "in the court of the State" to mean "a court that is part of the Maryland judiciary," meaning that § 12–104(a) does not permit a claimant to file a claim pursuant to the MTCA in federal court. *See State v. Sharafeldin,* 382 Md. 129, 149, 854 A.2d 1208, 1219 (2004) (defining "in a court of the State" as "a court that is part of the Maryland judiciary"). Thus, as *Wilson* demonstrates, even if § 12–104(a) of the State Government Article applied to suits filed in Maryland courts, and if a claimant filed suit against WMATA in federal court, § 12–104(a) would not apply because the plain language of § 12–104(a) does not permit an injured party to

file a claim pursuant to the MTCA in federal court.[5] If we apply the $200,000 limit on damages to suits originally filed in a court of this State, a claimant could avoid the damage "cap" by simply filing suit in federal court, instead of a Maryland state court. This cannot be the correct result. The waiver of sovereign immunity or the maximum amount of damages permitted should be the same in all cases against WMATA regardless of whether the suit is filed in state or federal court.

For the foregoing reasons, we hold that § 80 of the WMATA Compact, codified in Maryland at Md.Code, § 10–204(80) of the Transportation Article, states the extent to which WMATA has waived its sovereign immunity, and that the terms of waiver of sovereign immunity contained § 12–104(a)(1) of the State Government Article of the Maryland Code do no apply to WMATA, whether suit is filed in state or federal court.

**Question Three: Does the Maryland statutory cap on non-economic damages contained in § 11–108(b) of the Courts and Judicial Proceedings Article of the Maryland Code apply to civil actions filed against WMATA in light of the broad waiver of sovereign immunity contained in § 80 of the WMATA Compact?**

 Section 80 of the WMATA Compact, codified at § 10–204(80) of the Transportation Article, states that WMATA

---

5. In its original formulation of Question 1, the District Court asked whether the phrase "in a court of the State" applies to actions that are removed to a United States District Court. The significance of the phrase "in a court of the State" is that it demonstrates the Legislature's intent to retain the State's Eleventh Amendment immunity from suit in federal court, as the State has retained its Eleventh Amendment immunity when a suit is filed pursuant to the MTCA. Arguably, if a suit filed pursuant to the MTCA in a Maryland state court were somehow properly removed to a federal court by the State, as WMATA removed the suit in the present case, the State would have waived its Eleventh Amendment immunity. *See Lapides v. Board of Regents*, 535 U.S. 613, 616, 122 S.Ct. 1640, 1642, 152 L.Ed.2d 806, 811 (voluntary removal by a State of a lawsuit from state court to federal court constitutes a waiver of Eleventh Amendment immunity from suit in federal court). As the reformulated question does not require that we reach this issue, we will refrain from doing so at this time.

"shall be liable for ... its torts and those of its directors, officers, employees, and agents committed in the conduct of any proprietary function, *in accordance with the law of the applicable signatory (including rules on conflict of laws)."* (Emphasis added.) Maryland ordinarily follows the *lex loci delicti* rule when analyzing choice of law problems in tort cases. *Philip Morris v. Angeletti,* 358 Md. 689, 744, 752 A.2d 200, 230 (2000). In the present case, it is undisputed that Maryland was the place of the alleged harm and that the parties intend to rely on the substantive law of Maryland.

Md.Code (1973, 2006 Repl.Vol.), § 11–108(b) of the Courts and Judicial Proceedings Article limits recovery for noneconomic damages in all tort cases.

**§ 11–108. Personal injury action—Limitation on noneconomic damages.**

\* \* \*

(b) *Limitation on amount of damages established.—*

(1) In any action for damages for personal injury in which the cause of action arises on or after July 1, 1986, an award for noneconomic damages may not exceed $350,000.

(i) Except as provided in paragraph (3)(ii) of this subsection, in any action for damages for personal injury or wrongful death in which the cause of action arises on or after October 1, 1994, an award for noneconomic damages may not exceed $500,000.

(ii) The limitation on noneconomic damages provided under subparagraph (i) of this paragraph shall increase by $15,000 on October 1 of each year beginning on October 1, 1995. The increased amount shall apply to causes of action arising between October 1 of that year and September 30 of the following year, inclusive.

(3)(i) The limitation established under paragraph (2) of this subsection shall apply in a personal injury action to each direct victim of tortious conduct and all persons who claim injury by or through that victim.

(ii) In a wrongful death action in which there are two or more claimants or beneficiaries, an award for noneconomic

damages may not exceed 150% of the limitation established under paragraph (2) of this subsection, regardless of the number of claimants or beneficiaries who share in the award.

■■■ It is without question that this Court views Maryland's non-economic damages cap, § 11–108(b) of the Courts and Judicial Proceedings Article, as substantive law. *Erie v. Heffernan*, 399 Md. 598, 633, 925 A.2d 636, 657 (2007). Unlike the limit on the State's sovereign immunity contained in the MTCA, discussed *supra*, the non-economic damages cap contained in § 11–108(b) applies to all tort claims filed pursuant to Maryland law. Neither party in this case disputed the application of § 11–108(b). Thus, we hold that the non-economic damages cap contained in § 11–108(b) of the Courts and Judicial Proceedings Article applies to claims filed against WMATA as part of the substantive law of Maryland, incorporated into claims against WMATA through § 80 of the WMATA Compact.

**Question Four: Does Maryland decisional law, specifically *Oaks v. Connors*, 339 Md. 24, 35, 660 A.2d 423 (1995), apply to preclude a recovery by both spouses for a loss of consortium claim brought against WMATA in light of the broad waiver of sovereign immunity contained in § 80 of the WMATA Compact?**

■■■ This Court, in *Oaks v. Connors*, 339 Md. 24, 660 A.2d 423 (1995), analyzed the application of § 11–108(b) of the Courts and Judicial Proceedings Article to a loss of consortium claims by the marital unit arising out of a tort claim. Upon considering whether a loss of consortium claim is a separate, independent claim for purposes of the cap on non-economic damages contained in § 11–108(b) of the Courts and Judicial Proceedings Article, or whether the Legislature intended that the individual claim of the injured person and the derivative loss of consortium claim shall be treated as a single claim, this Court held that the claims of the injured person and the derivative loss of consortium claim are treated as a

single claim for purposes of § 11–108(b). *Oaks,* 339 Md. at 35–36, 660 A.2d at 428–29.

As discussed *supra,* § 80 of the WMATA Compact incorporates the substantive tort law of Maryland into claims against WMATA. State substantive law is applied by a federal court "whether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision." *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188, 1194 (1938). Thus, this Court's decision in *Oaks* applies to claims against WMATA as part of Maryland's substantive law on torts. As with Question Three, neither party disputed the application of this Court's decision in *Oaks.*

We note that *Oaks,* on its face, does not preclude recovery by the marital unit for a loss of consortium claim, but rather holds that "a loss of consortium claim is derivative of the injured spouse's claim for personal injury and, therefore, a single cap for noneconomic damages applies to the whole action." *Oaks,* 339 Md. at 38, 660 A.2d at 430. Thus, the sum of the recovery for noneconomic damages on the primary claim and the derivative loss of consortium clam shall not exceed the limit stated in § 11–108(b) of the Courts and Judicial Proceedings Article.

**CERTIFIED QUESTIONS OF LAW ANSWERED AS SET FORTH ABOVE. COSTS TO BE EQUALLY DIVIDED BY THE PARTIES.**