656 A.2d 400

**STATE of Maryland, et al.**

v.

**Dale S. CARD.**

**No. 1285, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

April 5, 1995.

Andrew H. Baida, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Steven G. Hildenbrand, Asst. Atty. Gen., on the brief), Baltimore, for appellant, State of Maryland.

Roger Lee Fink, County Atty. of La Plata, for appellant, Charles County.

Michael J. Schreyer (Andrews, Schick, Bongar and Starkey, P.A., on the brief), Waldorf, for appellee.

**440**

Argued before WILNER, C.J., and ALPERT and FRIEDMAN and KATHLEEN O'FERRALL (specially assigned), JJ.

WILNER, Chief Judge.

The State of Maryland, joined by Charles County, appeals from a $50,000 judgment entered by the Circuit Court for Charles County in favor of appellee, Dale S. Card. The principal issue before us is whether a statute enacted in 1990, amending the State Tort Claims Act, is applicable to appellee's claim. We shall hold that it is.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 16, 1989, while a pre-trial detainee in the Charles County Detention Center, appellee was attacked by another inmate, one James Sweeney. On July 29, 1991, Card sued the State and the County for negligence. The State was sued on the ground that (1) Card was in the custody of the county sheriff, who is a State official and who was responsible for the operation of the detention center, (2) the sheriff was negligent in failing to control Sweeney, whom he knew to be dangerous, and in failing to maintain security and ventilation equipment within the detention center, and (3) the State is vicariously liable for the sheriff's negligence. The county was sued because it owns the detention center and allegedly had the power to correct the alleged deficiencies in the center.

The defendants moved to dismiss the complaint on the ground of sovereign or governmental immunity. When those motions were denied, they raised the immunity defenses again in motions for summary judgment. The county's motion was granted upon a finding that the county enjoyed governmental immunity; the State's motion was denied upon findings that (1) the sheriff is a State official and was responsible for the operation of the detention center, (2) by virtue of the 1990 enactment, the State had waived its sovereign immunity with respect to tortious conduct by sheriffs and their deputies, and (3) that enactment applied to appellee's 1991 claim, even though the event underlying that claim occurred in 1989. As

noted, the case against the State then proceeded to trial and resulted in a plaintiff's judgment.

## II. DISCUSSION

### A. Tort Claims Act And Sheriffs—Legislative History

Several issues are raised by the parties, but they all concern whether the State has retained its sovereign immunity with respect to appellee's claim. In resolving that ultimate question and, with it, the respective interests of the State and Charles County, we need to examine some of the recent cases and legislative enactments concerning tort claims against sheriffs, their deputies, and their offices.

We observe at this point that, although Charles County was dismissed as a defendant and the judgment was entered only against the State, it is Charles County that nonetheless bears the financial risk, for, as we shall explain later, if the State has lost its sovereign immunity, the county will be required by statute to reimburse the State for its expense in defending the action and discharging the judgment.

We shall begin our analysis with a 1988 case that did not directly involve sheriffs or their deputies. In *Clea v. City of Baltimore*, 312 Md. 662, 541 A.2d 1303 (1988), the Court considered whether Baltimore City, as a municipality, was vicariously liable for the tortious conduct of City police officers. The Court held that the City Police Department was a State, rather than a City, agency and that, as a result, City police officers were State, rather than City, employees, at least for tort liability purposes. As no recovery was sought in that case against the State, whether, and to what extent, State sovereign immunity might apply to the claim was not addressed.

As rewritten in 1985, the State Tort Claims Act waived the State's sovereign immunity with respect to certain tortious conduct of "State personnel," and defined that term as including "an individual who, with or without compensation, exercises a part of the sovereignty of the State." Md.Code, State Govt. art. § 12-101(4) (1984; 1988 Supp.). It was immediately

apparent, of course, that nearly all local law enforcement officers, as well as sheriffs and their deputies, routinely exercise a part of the sovereignty of the State. Thus, as we pointed out in *State v. Meade,* 101 Md.App. 512, 523, 647 A.2d 830 (1994), even though the scope of the State Tort Claims Act was not specifically addressed in *Clea,* the Opinion in that case nonetheless "raised the specter of State liability for the conduct of persons regarded as State officers but who were neither paid nor directly controlled by the State." Responding to that prospect, the State Treasurer's Office, which was responsible for providing insurance to cover claims under the Act, drafted and presented a bill to the next (1989) session of the Legislature to limit the Act in this regard.

The 1989 Act (1989 Md.Laws, ch. 413) essentially rewrote the definition of "State personnel," but, for our purposes, the relevant changes were in limiting its scope to State employees or officials who are paid in whole or in part by the Central Payroll Bureau in the Comptroller's office and other persons exercising the sovereignty of the State *without compensation.* Those changes served to exclude from the Act, and thus to restore the State's sovereign immunity with respect to, sheriffs, deputy sheriffs, and other local law enforcement personnel who were compensated for their services but were not paid through the State Central Payroll Bureau.

The next event in the chain was *Rucker v. Harford County,* 316 Md. 275, 558 A.2d 399 (1989), where, in response to two questions certified to it by the United States District Court, the Court of Appeals held that sheriffs and their deputies were State, rather than county, employees, and that, as a result, the county had no obligation to fund expenses associated with tort claims against those officials.

In dealing with the second question, the Court examined the State Tort Claims Act, as it existed immediately prior to the 1989 amendment—that amendment not yet having taken effect—as well as the Local Government Tort Claims Act (LGTCA). The Court first concluded that, although the Legislature had, in the LGTCA, imposed liability on the counties

for the tortious conduct of some State personnel, it had not imposed liability under that Act for the conduct of sheriffs and their deputies. As a matter of statutory construction, therefore, the county had no obligation to fund any of the expenses associated with tort liability claims against the sheriff, his or her deputies, or the sheriff's office. 316 Md. at 297, 558 A.2d 399.

As we noted above, the State Act, prior to 1989, purported to waive the State's sovereign immunity with respect to certain tortious conduct of any person who exercised a part of the sovereignty of the State, with or without compensation. The State conceded in *Rucker* that, read literally, that language encompassed sheriffs and their deputies, who clearly exercised part of the sovereignty of the State. It argued, however, that the statute should not be read literally, for to do so would also sweep within its ambit a host of local employees who were neither paid by nor subject to the control of the State. The Court agreed that the language did not encompass the torts of "purely local government officials and employees," but held that it did include conduct of persons who were either State officers or employees or who were directly acting for the State, rather than a local, government. *Id.* at 299. It therefore included sheriffs and their deputies.

The *Rucker* Opinion was filed in June, 1989. Although the Court did not consider the effect of the 1989 amendment (*see* 316 Md. at 298, n. 11, 558 A.2d 399), the combined effect of *Rucker* and the 1989 statute was to leave sheriffs and their deputies excluded from both the LGTCA and the State Tort Claims Act. *Rucker* declared them outside the scope of the LGTCA, and the 1989 statute excluded them from the State Tort Claims Act. *See Meade, supra,* 101 Md.App. at 524, 647 A.2d 830. Because they were excluded from both statutes, they had only their common law governmental immunity to protect them; to the extent that immunity did not apply or was overcome, they faced the prospect of personal liability for their tortious conduct. Claimants, of course, were without the resources of the county or the State to pay any judgment they might obtain.

Those problems were addressed in the next (1990) session of the Legislature. Through emergency legislation, effective when signed by the Governor on May 29, 1990, the General Assembly attempted to sort out the various functions performed by sheriffs and their deputies throughout the State, which varied from county to county, and to provide an umbrella of State protection, with the cost of that protection to be assessed to the State or the county, depending on the function involved.

Documents on file with the Department of Legislative Reference indicate that the final version of the Act (1990 Md. Laws, ch. 508) represented a compromise among the Maryland Sheriff's Association, the Maryland Association of Counties, the State Treasurer's Office, the Attorney General, and the Administration. Sheriffs and their deputies were specifically included within the definition of "State personnel" for purposes of the State Tort Claims Act (State Govt. art., § 12–101), but the Board of Public Works was precluded from paying any claim against such persons unless it directly related to courthouse security, service of process, or transportation of inmates to or from court proceedings. Those were the three functions for which the State assumed ultimate financial responsibility.

Through a new section (§ 9–108) added to the title of the State Fin. & Proc. art. dealing with the State insurance program, the counties were authorized to obtain insurance coverage with respect to all other tort claims made against sheriffs and their deputies. To the extent that a county did not obtain insurance adequate "to satisfy the coverage and defense necessary under the Maryland Tort Claims Act," the State was authorized to set off against certain funds due from the State to the county an assessment for coverage and litigation expenses. *See also* State Gov't art., § 12–501(a)(iv), authorizing the Board of Public Works to pay such a claim from one of those funds. The Assistant Executive Director of the Maryland Association of Counties, in a letter to the Senate Judicial Proceedings Committee, characterized the bill, with the agreed-upon amendments, as follows:

"The counties that use the sheriff for police protection and for detention center purposes gain the benefits of the State Tort Claims Act and will pay the insurance costs and will reimburse the state when it pays for any settlements of judgments outside the scope of the Act, such as federal civil rights lawsuits. The counties that use their sheriff for only courthouse purposes will be covered by the State Tort Claims Act without any cost."

As we indicated, the 1990 statute was passed as emergency legislation (Md. Const. art. XVI, § 2) and thus was stated to "take effect from the date it is enacted."

### B. Application of Tort Claims Act To Appellee's Claim

In defending his judgment, Card makes two arguments. First, he contends that the applicability of the 1990 statute is irrelevant because under the pre-existing law, even with the 1989 amendment, State sovereign immunity had been waived. Alternatively, he argues that the 1990 law *does* apply to his claim.

*Section 12–104(a)*

Card's first argument is based on the premise that, because his action, as it now survives, is solely against the State and not against any individual, whether the sheriff or his deputies were within the definition of "State personnel" at the time of the attack is unimportant. State Govt. art. § 12–104(a), he points out, states that "[s]ubject to the exclusions and limitations in this subtitle, the immunity of the State and of its units is waived as to a tort action, in a court of the State, to the extent of insurance coverage under Title 9 of the State Finance and Procurement Article." That section, he reminds us, says nothing about State personnel and thus suffices to waive the State's sovereign immunity without regard to the definition of "State personnel." The scope of that term, he contends, is relevant only when the action is against the individual, for its sole purpose is to define the class of individuals immune from suit or liability.

We do not share that view; nor do we share the State's response, given for the first time in its reply brief, that the waiver of sovereign immunity does not extend beyond the tortious conduct of "State personnel."

The various sections of the Tort Claims Act have to be read together, in harmony. When first enacted in 1981, the Act specified six types of claims as to which, to the extent funded by insurance and subject to certain other conditions and limitations, the State's sovereign immunity was waived. Md. Code, Cts. & Jud.Proc. art. § 5–403 (1980; 1981 Supp.). Four of those categories (§ 5–403(a)(1), (2), (4), and (6)) involved tortious conduct by a "State employee," a term defined in § 5–401 and later replaced with the more embracive term "State personnel." *See* Revisor's Note to State Govt. art., § 12–101, as enacted by 1984 Md.Laws, ch. 284. The other two categories (§ 5–403(a)(3) and (5)) involved claims arising from the patently dangerous condition of a building or other facility owned and controlled by the State or by the defective or dangerous condition of a street, highway, or sidewalk owned and controlled by the State.

In 1985, the Tort Claims Act was expanded. In lieu of the six categories enumerated in the 1981 Act, § 12–104(a) waived sovereign immunity "to the extent of insurance coverage under Title 9 of the State Finance and Procurement Article." To a large extent, that provision was, and remains, circular in nature; in defining the scope of the insurance program, State Fin. & Proc. art. § 9–105(c), provides that "[t]o the extent that funds are available in the State budget, the Treasurer shall provide sufficient self-insurance, purchased insurance, or both to cover the liability of the State and its units and personnel under the Maryland Tort Claims Act."

There is nothing in the record extract in this case, and we have not been referred to anything in the record itself, indicating the type, scope, or provisions of the insurance available at any relevant time pursuant to § 9–105(c). We note, however, that no claim has been made by the State in this appeal (and no claim was made by it below in its motion

for summary judgment or in its post-trial motions) that insurance coverage was not available to pay Card's judgment.[1]

Even with the clearly intended expansion of the waiver in the 1985 legislation, we are still left with the underlying principle that the State could only be liable in the first instance by virtue of either the vicarious liability arising from the tortious conduct of one of its agents, or harm arising from property that it owns or controls. The 1985 Act could thus have expanded only the categories of agents for whom the State would effectively accept vicarious liability and the categories of State-owned or controlled property as to which it would entertain claims. There is nothing in the Act itself, or in its history, suggesting an intent that the State be liable for the conduct of persons other than those included within the definition of "State personnel," except to the extent that the liability arises from the defective condition of State-owned or controlled property, where the tortious conduct of any particular person is not relevant.

Appellee's action against the State was founded on the negligence of the sheriff in superintending the operation of the county detention center, not on the defective condition of any State-owned or controlled property. Accordingly, in this circumstance, the State could only be liable, and would only have waived its sovereign immunity, to the extent that the sheriff was included within the scope of "State personnel."

### Applicability of 1990 Statute

Card's alternative argument is founded on *Foor v. Juvenile Services*, 78 Md.App. 151, 552 A.2d 947, *cert. denied*, 316 Md. 364, 558 A.2d 1206 (1989). The State, in response, claims (1) that *Foor* was wrongly decided and should be overruled or

---

1. We assume that this defense was not raised because, in the State's view, it is irrelevant. The State's position is that its liability depends solely upon the applicability of the 1990 statute, and that, under that statute, ultimate responsibility for Card's claim, arising from the operation of the county detention center rather than from any judicial or courthouse function performed by the sheriff, would fall on Charles County.

ignored, and (2) that, in any event, this case is distinguishable because the 1990 statute in question was passed as an emergency measure. We do not agree with either of those responses. We believe that *Foor* was correct and that it controls.

In *Foor,* we considered whether the 1985 law expanding the scope of the Tort Claims Act applied to a lawsuit first filed in 1986, based on negligent conduct occurring in 1983. There, as here, the State argued that the more recent enactment, upon which the plaintiff's right to recover depended, did not apply to an event occurring before the effective date of the enactment.

We concluded that, because the Tort Claims Act was remedial legislation, providing merely a remedy and not creating or altering substantive rights, the issue was solely one of legislative intent. One indication of that intent, we observed, was the Legislature's own direction, expressed in § 12–102, that the statute be "construed broadly, to ensure that injured parties have a remedy."

We also traced the modern history of immunity-waiver legislation in Maryland, noting that, in the first such statute, a 1976 Act waiving sovereign immunity with respect to breach of contract claims, the General Assembly carefully provided that the waiver would not apply to any contract entered into prior to the effective date of the Act. In so doing, we said, the Legislature had "made crystal clear . . . that the waiver was to be entirely prospective and that the relevant event for that purpose was not the filing of the action but the contract itself." 78 Md.App. at 162–63, 552 A.2d 947. A similar approach was taken, we observed, with the initial enactment of the Tort Claims Act in 1981. Not only did the Legislature delay the effective date of the Act for a year, it expressly provided that the statute was to apply "only to causes of action *arising* on or after [the effective date]." *Id.* at 163, 552 A.2d 947 (emphasis added).

In sharp contrast to that approach taken in 1976 and 1981, when enacting the 1985 statute, the Legislature simply provid-

ed that it shall take effect on July 1, 1985. Especially in view of the fact that the bill was drafted and supported by the State Treasurer and the Attorney General, the two officials principally charged with implementing it, we regarded the omission to follow the earlier approach significant—a further indication that the Legislature intended the Act to cover any claims made after its effective date, even if the underlying basis for the claim occurred earlier. We stated, at 163–64, 552 A.2d 947:

> "We assume that the Legislature was aware of the special provisions that it had added to the 1976 and 1981 bills, that it fully understood that the 1985 bill represented a significant enlargement of the waiver of immunity, in terms of both the kinds of actions to which the waiver would apply and the amount of damages for which the State would become liable, and that it was also aware of its direction, specified in § 12–102, that the Tort Claims Act be given a broad construction favorable to claimants. With that background, and given the fact that a waiver of immunity is more of a remedial than a substantive measure, we conclude that the Legislature intended the expansion to apply to actions *filed* on or after July 1, 1985, and not just to actions *accruing* after that date."

The State, in this case, seeks to distinguish *Foor* on the ground that the 1990 statute, unlike the 1985 law, was passed as emergency legislation, to take effect upon signature by the Governor. Citing cases wholly inapposite, it urges that, in choosing a date other than the Constitutional effective date of June 1, the Legislature must have intended the 1990 statute to apply only to conduct occurring after the effective date.

The first case cited by the State—*Unsatisfied Fund v. Bowman*, 249 Md. 705, 241 A.2d 714 (1968)—involved a statute increasing the minimum financial responsibility required for injuries under the motor vehicle laws and the maximum amount recoverable from the then-existing Unsatisfied Claim and Judgment Fund. The statute was enacted in the 1964 session of the Legislature and was approved by the Governor in April of that year; by specific language, however, it was not

made effective until April 1, 1965. The issue before the Court was whether the Act applied to a claim based on injuries occurring before the effective date. Regarding the matter as one of legislative intent, the Court considered a number of factors, including the fact that the General Assembly had *delayed* the effective date beyond the Constitutional date of June 1, 1964, in deciding that the Act did not apply to claims based on injuries occurring before the effective date.

In *State of Maryland, Dept. of N. Res. v. Amerada Hess Corp.*, 350 F.Supp. 1060, 1070 (D.Md.1972), the Court, citing *Bowman*, concluded that two statutes, creating a new statutory liability for oil spills, would not be applied to a spill occurring before their effective date. As in *Bowman*, the Court gave weight to the fact that, although the Legislature could have made the statutes effective June 1, it delayed their effective date to July 1, thus indicating an intent that they not apply retroactively.

Here, of course, the Legislature did not delay the effective date of the 1990 statute; by enacting the bill as an emergency measure, it advanced the effective date. If anything is to be inferred from that, it must be an intent to have the statute applicable as soon as possible.

The more telling fact is that, by 1990, the Legislature was presumably aware of our decision in *Foor*. The case was cited four times in the 1989 Code Supplement annotations to §§ 12–102, 12–104, and 12–105. The Legislature thus knew that, in determining the application of any expansion of the Tort Claims Act, we would look carefully at the wording of the effective date provision, and, nonetheless, it adopted precisely the same approach it had taken with respect to the 1985 statute. We see no basis for distinguishing the analysis, or the holding, in *Foor*.

Nor do we accept the State's alternative request that we abandon and overrule *Foor*. We believe that that case was

correctly decided by us and that this case was correctly decided by the circuit court.

JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.