23 A.3d 897

Garrett P. TOLLENGER, Individually and as
Personal Representative of the Estate of
Ashley Paige Tollenger, Deceased

v.

STATE of Maryland.

No. 2118, Sept. Term, 2009.

Court of Special Appeals of Maryland.

July 5, 2011.

Clay M. Barnes, Towson, MD, for appellant.

Steven M. Sullivan (Douglas Gansler, Atty. Gen., Michael W. Lord, on the brief), Baltimore, MD, for appellee.

Panel: WRIGHT, HOTTEN, and JAMES P. SALMON (Retired, Specially Assigned), JJ.

SALMON, J.

This is a motor tort case in which the State of Maryland and three of its agencies ("the State") convinced a motions judge, in the Circuit Court for Harford County, that there existed an

implied exception in the Maryland Tort Claims Act ("MTCA") that protects the State from lawsuits "arising from discretionary governmental planning and policy decisions that are authorized by statute." The governmental planning and policy decision at issue concerns a decision as to whether the State should have made an improvement to one of its bridges that the plaintiff contends was needed in order to make the bridge safe.

For reasons explained below, we shall hold that no implied exception to the Maryland Tort Claims Act shields the State from liability in this case. Therefore, we shall reverse the grant of summary judgment by the circuit court.

## I.

### Facts

The Thomas J. Hatem Memorial Bridge (hereinafter "the bridge") connects Havre de Grace in Harford County to Perryville in Cecil County, Maryland. The bridge is four lanes, two in each direction.

On August 10, 2001, at approximately 4:39 p.m., it was raining heavily as Kenneth Connor was driving his pickup in the right-hand, westbound, lane of the bridge. The front seat passenger in Mr. Connor's pickup was twelve-year old Ashley Paige Tollenger. For unknown reasons, Mr. Connor's pickup went out of control, crossed the center line and struck a vehicle that was being driven by Eric Lee Klotz in the opposite direction. Prior to the accident, Mr. Klotz was driving lawfully in the right-hand, eastbound lane of the bridge. As a result of the collision both Mr. Connor and Ashley Tollenger were killed.

The bridge did not have a median barrier (hereinafter "jersey wall") to separate east and westbound lanes of traffic when the accident occurred. Instead of a jersey wall, the east and westbound lanes of traffic were demarcated only by a painted double line.

Prior to the subject accident, the bridge had been in operation for 61 years. There had been twelve cross-over accidents in the ten years immediately prior to the August 10, 2001, collision. Two of the collisions resulted in fatalities, one in 1995, and another in December 1999. In addition, in January 2000, a driver crossed over the center line and collided head-on with a vehicle traveling in the opposite direction, which resulted in serious personal injuries.

On January 18, 2000, members of the Maryland Transportation Authority Safety Committee discussed the problem of cross-over collisions on the bridge. Among other things, the Safety Committee reviewed options for reduction of opposite direction accidents on the bridge, including the possibility of installing a "permanent concrete barrier."

The Maryland Transportation Authority's Director of Engineering, Faysal Thameen, wrote a memorandum to the Executive Director of the Transportation Authority on February 25, 2000. In that memorandum he said, "[w]e feel that the installation of a temporary concrete median barrier is the easiest and least expensive option to install. This option will enhance safety by providing a positive barrier between opposing travel lanes without [a]ffecting the life of the bridge deck." Mr. Thameen also voiced the opinion that "the benefits from the elimination of opposite direction accidents outweighs the disadvantages."

At its meeting on March 21, 2000, the Maryland Transportation Authority considered recommendations concerning a proposed project to install a jersey barrier on the bridge but, after discussions of various options, voted to table the project for future discussion. That decision was based, in part, upon concerns that the addition of the jersey barrier would result in narrowing of the bridge's travel lanes, which might lead to more frequent accidents.

On August 21, 2001, which was eleven days after the accident that caused Ashley Tollenger's death, the Chief Engineer for the Maryland Transportation Authority requested approval for the installation of a jersey barrier on the bridge.

That authorization was given and commencement of the project to install a jersey barrier separating east and west bound bridge traffic began on January 17, 2002. The project was completed forty-nine days later.

On August 6, 2004, Garrett P. Tollenger, individually and as personal representative of the estate of his daughter, Ashley Paige Tollenger (collectively "Mr. Tollenger"), filed a lawsuit in the Circuit Court for Harford County against, *inter alia*, the State of Maryland and three of its agencies. The State agencies sued were the Maryland Department of Transportation, the Maryland Transportation Authority, and the Maryland State Highway Administration. Mr. Tollenger's complaint included a wrongful death claim on his own behalf, and a survivorship claim that he brought on behalf of his daughter's estate. The complaint alleged, insofar as is here relevant, that the State had a duty to install "barricades and barriers in the median of [the bridge] . . . and/or to install median dividers on . . . [the bridge] and to otherwise design, construct, and implement . . . safety measures necessary and appropriate for the safe operation of motor vehicles upon . . . [the bridge], including the motor vehicle occupied by . . . [Ashley Tollenger] on August 10, 2001." According to the complaint, the State breached the aforementioned duties and, as a proximate cause of those breaches, Ashley Tollenger was killed.

The State defendants filed their answers to Mr. Tollenger's complaint in March, 2005. Thereafter, the State defendants and Mr. Tollenger engaged in a lengthy and vigorous battle concerning the permissible scope of information that the State was obligated to disclose concerning the jersey barrier decision and other matters. On two occasions, the State defendants filed interlocutory appeals to this Court concerning discovery issues. Both of those appeals were dismissed by this Court as premature.

On August 12, 2009, after the subject lawsuit had been at issue for more than four years, the Maryland Department of Transportation filed a motion for summary judgment in which

it asserted, *inter alia*, that Mr. Tollenger's suit was barred by the doctrine of sovereign immunity. Subsequently, the remaining State defendants joined in that motion. The motions judge, after considering the opposition filed by Mr. Tollenger, granted summary judgment in favor of the State defendants.

The motions judge reasoned as follows: 1) the negligent act that Mr. Tollenger claimed was a proximate cause of Ashley Tollenger's death was the failure to erect a jersey barrier; 2) the decision to not erect a jersey barrier prior to the accident was made by public officials; 3) if the public officials who made the decision not to erect the jersey barrier were immune from suit, then the State and its agencies, under the provision of the Maryland Tort Claims Act, were also immune; 4) the public officials who made the decision were immune from suit because they were performing "discretionary" duties when they elected (pre-accident) not to erect the barrier; 5) therefore, because there exists no "legislative mandate to the contrary," the State was not liable for its failure to erect the barrier. We shall reverse the motions judge's grant of summary judgment on the grounds that there does exist a "legislative mandate to the contrary." That "legislative mandate" is contained in the MTCA.

## II.

Prior to 1976, the State of Maryland and its agencies enjoyed complete sovereign immunity from both tort and contract actions. Unlike municipalities and counties, which at common law could be held liable for tortious conduct while acting in a "private or proprietary capacity" (*DiPino v. Davis*, 354 Md. 18, 47, 729 A.2d 354 (1999)), the State enjoyed sovereign immunity whether it was functioning in a governmental or proprietary capacity. Thus, at common law neither the State nor its agencies could have been successfully sued for the type of negligence alleged in Mr. Tollenger's complaint.

The General Assembly, in 1976, enacted a conditional waiver of sovereign immunity in contract actions against the State.

*See* Laws of 1976, ch. 450. Presently the State's waiver of sovereign immunity for contract actions, and the conditions that must be met in order for the waiver to apply, are set forth in Maryland Code (2009 Repl.Vol.), State Government Article, sections 12–201–12–204.[1]

The Maryland Tort Claims Act was first enacted in 1981, and became effective on July 1, 1982. The Act specified six types of claims for which the State's sovereign immunity was waived to the extent funded by insurance and subject to certain other conditions.[2] *See* Maryland Code (1980, 1981 Sup.) Courts and Judicial Proceedings Article, section 5–403.

---

1. Section 12–201 of the State Government Article ["SG"] reads as follows:

   the State, its officers, and its units may not raise the defense of sovereign immunity in a contract action, in a court of the State, based on a written contract that an official or employee executed for the State or 1 of its units while the official or employee was acting within the scope of the authority of the official or employee. SG section 12–202 conditions the waiver of sovereign immunity as follows: "A claim under this subtitle is barred unless the claimant files suit within 1 year after the later of: (1) the date on which the claim arose; or (2) the completion of the contract that gives rise to the claim."

2. In *Condon v. State,* 332 Md. 481, 493, 632 A.2d 753 (1993), the Court of Appeals discussed the procedural restrictions of the MTCA as originally enacted, viz:

   As originally enacted, the MTCA provided certain procedural restrictions on filing suit against the State. The Act specified that suit could be filed only after first presenting a claim in writing to the State Treasurer and waiting until the claim was finally denied; that the claimant could, but was not required to, consider a claim finally denied if the Treasurer did not notify the claimant of final denial by certified mail within six months; and that the filing of a claim tolled the applicable statute of limitations until sixty days following a final denial if the claim was made within the applicable period of limitations. Thus, under the original MTCA, a claimant could file a claim at any time within the three-year limitations period after the cause of action arose. Then, upon receiving a final denial, the claimant had an additional sixty days in which to file suit. If the claimant did not receive a final denial within six months of filing the claim, the claimant could consider the claim to be finally denied, or could instead wait for written notice of final denial. Therefore, a claimant under the 1981 Act could file suit well beyond three years after a cause of action arose, depending upon when the claim was filed and when final denial was received.

As the MTCA was initially enacted, subsection (a) of section 5–403 provided:

(a) *Actions in which State's immunity is waived.*—Except as provided in subsection (b) of this section, the immunity of the State from suit in the courts of this State and liability in tort is waived in the following actions to the extent and in the amount that the State is covered by a program of insurance established by the Treasurer pursuant to § 27 of Article 95.

(1) An action to recover damages caused by the negligent maintenance or operation of a motor vehicle by a State employee;

(2) An action to recover damages caused by the negligence of a health care employee of a State facility or institution or by a doctor, nurse, dentist, or related health care personnel employed by the State;

(3) *An action to recover damages caused by the patently dangerous condition of a building, structure, or other public improvement owned and controlled by the State;*

(4) *An action to recover damages caused by the negligent use or maintenance of State property by a State employee;*

(5) *an action to recover damages caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk, or highway owned and controlled by the State if constructive or actual notice of the condition existed; and*

(6) An action to recover damages caused by the negligent failure of a State employee to properly supervise an activity at a State park or recreation facility.

(Emphasis added.)

As discussed in *Kee v. State Highway Admin.*, 313 Md. 445, 545 A.2d 1312 (1988), the MTCA, as originally enacted, waived the State's immunity, provided that adequate insurance coverage and other conditions precedent to suit were met, for causes of actions like the one filed by Mr. Tollenger. *See* Maryland Code (1980 Repl.Vol., 1983 Cum Supp., Courts & Judicial Proceedings Article, section 5–403(a)(5)).

In *Kee*, an accident occurred in September, 1982, on Old National Pike Highway in Frederick County, Maryland, when an automobile swerved to avoid another vehicle, went through a guardrail, and slid down an embankment, resulting in the death of Mark Schaffert and serious injury to Gary Schaffert. *Kee*, 313 Md. at 451, 545 A.2d 1312. Gary Schaffert along with his mother, Evelyn Kee, individually and as personal representative of Mark Schaffert's estate, filed a complaint in which they alleged "that the injuries occurred as a result of a negligently maintained guardrail that could not withstand the impact of the vehicle, thus allowing the vehicle to flip over and slide down the embankment" and cause the death of Mark Schaffert. *Id.* at 452, 545 A.2d 1312. Plaintiffs also alleged that the State had pre-accident knowledge of the dangerous condition of the guardrails. *Id.*

In *Kee*, the State asserted that plaintiffs' claims fell within paragraph (5) of section 5–403(a), which related to damages caused by a defective, unsafe, or dangerous condition of State highways. *Id.* Nevertheless, the State maintained that in 1982, when the accident occurred, the State still had immunity because it had no insurance "to cover an action to recover damages caused by a defective, unsafe, or dangerous condition of any ... highway owned and controlled by the State...." *Id.* at 453, 545 A.2d 1312.

The Court of Appeals agreed that the State retained its immunity for causes of actions occurring in 1982 and falling only within section 5–403(a)(5) because in 1982 "there was no authority or provision for the payment of claims." *Id.* at 457, 545 A.2d 1312. The *Kee* Court went on to hold, however, that the plaintiffs' claims might fit within paragraphs (3) and (4) of section 5–403(a) and that there was a possibility that a policy issued to the State by Reliance Insurance Company, might insure the State from claims like those made by the plaintiffs. *Id.* at 461–62, 545 A.2d 1312. In reaching the last mentioned conclusion, the *Kee* Court examined the legislative history of the Maryland Tort Claims Act and noted that the Senate Committee's report concerning the 1981 version of the MTCA "expressly stated with regard to § 5–403(a)(4): 'the waiver in

this paragraph is the broadest of the six and therefore overlaps to some extent most of the others.' "

The MTCA, as initially enacted was, in the words of Carl F. Eastwick, Chief Legislative Officer for the Governor, but "a cautious beginning in the effort to abolish the sovereign immunity doctrine," *See,* Sovereign Immunity Testimony, SB585 (1982); *See also, State Highway Admin. v. Kim,* 353 Md. 313, 320, 726 A.2d 238 (1999). Notably the initial version of the MTCA set forth several instances in which the immunity was not waived. *Id.*

When the MTCA was initially enacted, section 5–403(b) of the Courts and Judicial Proceedings Article read:

Purposes for which immunity not waived.—The immunity of the State in tort is not waived for the following purposes:

(1) Punitive damages;

(2) Interest prior to judgment;

(3) Individual claims in excess of $100,000;

(4) An aggregate of claims arising from the same occurrence in excess of $500,000;

(5) Any claim arising out of the combatant activities of the militia of this State during a state of emergency; and

(6) Any cause of action specifically prohibited by law.

In 1984, the format of the MTCA was changed by moving the Act from the Courts and Judicial Proceedings Article to its present location in the State Government Article. *See* 1984 Md. Laws, Chap. 284. The next year, the coverage of the MTCA was greatly broadened by Chapter 538 of the Act's of 1985, which was effective July 1, 1985. The 1985 amendment was remedial legislation which, by the legislature's own direction, was to be "construed broadly, to ensure that injured parties have a remedy." *See* section 12–102 of the State Government Article.

The MTCA as amended in 1985, waived the State's sovereign immunity with respect to certain tortious conduct of "State personnel," and defined that last mentioned term as including "an individual who, with or without compensation,

exercises a part of the sovereignty of the State." *See* Maryland Code (1984, 1988 Supp.), State Government Article, section 12–101(4). In lieu of the six categories enumerated in the 1981 Act, section 12–104(a) of the State Government Article waived its sovereign immunity in tort actions filed in Maryland "to the extent of insurance coverage under Title 9 of the State Finance and Procurement Article." The MTCA was again amended by chapter 413, 1988 Maryland Laws to redefine the term "State personnel" so as to exclude from its coverage sheriffs, deputy sheriffs and other local law enforcement persons who were compensated for their services but were not paid through the State Central Payroll Bureau. *State v. Card*, 104 Md.App. 439, 442, 656 A.2d 400 (1995). In 1990, the MTCA was changed once again so as to make the State liable for the actions of sheriffs engaged in police protection and for operating detention centers. *Id.* at 445, 656 A.2d 400.

Presently, and when the subject accident occurred, Maryland Code (2009 Repl.Vol.) State Government Article section 12–104 reads:

**§ 12–104. Waiver of immunity.**

(a) *In general.*—(1) Subject to the exclusions and limitations in this subtitle and notwithstanding any other provision of law, *the immunity of the State and of its units is waived as to a tort action, in a court of the State, to the extent provided under paragraph (2) of this subsection.*

(2) The liability of the State and its units may not exceed $200,000 to a single claimant for injuries arising from a single incident or occurrence.

(b) *Exclusions and limitations.*—*Immunity is not waived under this section as described under § 5–522(a) of the Courts and Judicial Proceedings Article.*

(c) *Payment of claims exceeding coverage.*—(1) The Treasurer may pay from the State Insurance Trust Fund all or part of that portion of a tort claim which exceeds the limitation on liability established under subsection (a)(2) of this section under the following conditions:

(i) the tort claim is one for which the State and its units have waived immunity under subsections (a) and (b) of this section;

(ii) a judgment or settlement has been entered granting the claimant damages to the full amount established under subsection (a)(2) of this section; and

(iii) the Board of Public Works, with the advice and counsel of the Attorney General, has approved the payment.

(2) Any payment for part of a settlement or judgment under this subsection does not abrogate the sovereign immunity of the State or any units beyond the waiver provided in subsections (a) and (b) of this section.

(Emphasis added.)

Section 5–522(a) of the Courts and Judicial Proceedings Article currently lists the purposes for which immunity is not waived, viz:

**§ 5–522. Immunity—State and its personnel and units.**

(a) *Tort liability—Exclusions from waiver under § 12–104 of the State Government Article.*—Immunity of the State is not waived under § 12–104 of the State Government Article for:

(1) Punitive damages;

(2) Interest before judgment;

(3) A claim that arises from the combatant activities of the State Militia during a state of emergency;

(4) Any tortious act or omission of State personnel that:

(i) Is not within the scope of the public duties of the State personnel; or

(ii) Is made with malice or gross negligence;

(5) A claim by an individual arising from a single incident or occurrence that exceeds $200,000; or

(6) A cause of action that law specifically prohibits.

The MTCA granted "State personnel" immunity from "liability described under § 5–522(b) of the Courts & Judicial Proceedings Article. *See* section 12–105 of the State Government Article. Section 5–522(b) provides:

(b) *In general.*—State personnel, as defined in § 12–101 of the State Government Article, are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity under Title 12, Subtitle 1 of the State Government Article, even if the damages exceed the limits of that waiver.

The issue we must decide is whether the General Assembly, when it enacted the MTCA and the various amendments thereto, intended that the State would retain the cloak of sovereign immunity for the discretionary acts of its public officials that allowed a bridge to be kept in a defective or dangerous highway condition, even though no such exclusion is mentioned in the statute. In this regard, the case of *State v. Card, supra,* 104 Md.App. at 444–45, 656 A.2d 400, is instructive.

At issue in *Card* was whether the State could be successfully sued for the (alleged) negligence of a sheriff, who operated a detention center. *Id.* at 440, 656 A.2d 400. According to the plaintiff's complaint, the plaintiff was injured because the sheriff, among other things: 1) failed to control an inmate known to be dangerous, and 2) failed to properly maintain security and ventilation equipment within the detention center where the plaintiff was confined. *Id.* at 440, 656 A.2d 400.

The first issue addressed by Chief Judge Alan Wilner, speaking for this Court in *Card,* was whether, under the MTCA, as it was written in 1985, the State could be held liable for the negligent actions of the sheriff. Judge Wilner explained, that under the MTCA as it existed in 1985, the State would not be liable for the sheriff's actions because the sheriff did not fit within the statutory definition of "State personnel." *Id.* at 447, 656 A.2d 400. What Judge Wilner said in that regard, is here relevant:

Even with the clearly intended expansion of the waiver in the 1985 legislation, we are still left with the underlying principle that the State could only be liable in the first

instance *by virtue of either the vicarious liability arising from the tortious conduct of one of its agents, or harm arising from property that it owns or controls.* The 1985 Act could thus have expanded *only the categories of agents for whom the State would effectively accept vicarious liability and the categories of State-owned or controlled property as to which it would entertain claims.* There is nothing in the Act itself, or in its history, suggesting an intent that the State be liable for the conduct of persons other than those included within the definition of "State personnel," *except to the extent that the liability arises from the defective condition of State-owned or controlled property, where the tortious conduct of any particular person is not relevant.* Appellee's action against the State was founded on the negligence of the sheriff in superintending the operation of the county detention center, *not on the defective condition of any State-owned or controlled property.* Accordingly, in this circumstance, the State could only be liable, and would only have waived its sovereign immunity, to the extent that the sheriff was included within the scope of "State personnel."

*Id.* at 447, 656 A.2d 400 (emphasis added).

In *Card,* the Court went on to hold, however, that a 1990 amendment to the MTCA that made the State liable for the actions of sheriffs and their deputies providing police protection and services at detention centers, should be applied retroactively, and therefore, the State had waived sovereign immunity for the claims raised by *Card* in his complaint. *Id.* at 445–50, 656 A.2d 400.

In the subject case, unlike the situation in *Card,* the State is not being sued for the negligent conduct of any named individual, but instead is being sued based on an allegation that "the defectiveness of State owned or controlled property" caused injury to the plaintiffs. *Id.* at 447, 656 A.2d 400.

More recently in *Proctor v. Washington Metro. Area Transit Auth.,* 412 Md. 691, 713, 990 A.2d 1048 (2010), the Court said:

[t]he notable features of the MTCA's waiver of sovereign immunity are: 1) the State *waives its sovereign immunity to all tort actions, arising out of governmental, proprietary, or other functions, unless specifically excluded by § 5–522(a)* of the Courts and Judicial Proceedings Article; 2) the exclusive remedy for recovery is to file a claim with the Treasurer pursuant to Md.Code (1984, 2009 Repl.Vol.), §§ 12–106 to 12–107 of the State Government Article, or institute an action in Maryland state court upon denial by the Treasurer; 3) the State retains its sovereign immunity for damages arising out of a single claim or occurrence in excess of $200,000; 4) the State retains its Eleventh Amendment immunity to suit in federal court, and 5) the waiver contained in the MTCA does not affect other waivers made by the Legislature in other sections of the Code.

(Emphasis supplied.)

Despite the language in *Proctor* stating that the MTCA waives the State's sovereign immunity arising out of "governmental" function, the State argues that there is an implied exception to the MTCA that protects the State and its agencies from lawsuits that arise out of conduct by public officials exercising "discretionary governmental planning and policy decisions [that are] authorized by statute." In support of that position the State relies, principally, on language found in *James v. Prince George's County,* 288 Md. 315, 336 n. 15, 418 A.2d 1173 (1980), and in *Parker v. State,* 337 Md. 271, 286, 653 A.2d 436 (1995).

The *James* decision concerned two motor tort cases that were consolidated. 288 Md. at 317, 418 A.2d 1173. In one of the consolidated cases, the plaintiff (Dawson) sued Prince George's County based on an allegation that he was injured in March, 1976, when a fire truck, being negligently operated by an agent of the County, struck his vehicle. *Id.* at 318, 418 A.2d 1173. At the time of the *Dawson* accident, section 1013 of the Prince George's County charter read:

**Section 1013. GOVERNMENTAL LIABILITY.**

The County may be sued in actions sounding in tort in the same manner and to the same extent that any private person may be sued. The County shall carry liability insurance with adequate limits to compensate for injury to persons or damage to property resulting from negligence and other wrongdoings of its officers, agents, and employees. Nothing herein shall preclude the County from meeting the requirements of this section by a funded self-insurance program.

*James v. Prince George's County*, 288 Md. 315, 320, 418 A.2d 1173 (1980).

The second of the consolidated cases in *James* was brought against Prince George's County by Kenneth James and his wife who sought recovery for damages sustained due to a November 1976 accident caused by a driver of an ambulance who was a county agent. *Id.* at 318, 320, 418 A.2d 1173. When the last-mentioned accident occurred, section 1013 of the Prince George's County Charter had been changed, but not in a manner that affected the *James* Court's decision. *Id.* at 321, 418 A.2d 1173.

In *James,* the County contended that because the driver of the fire truck and ambulance were both "public officials" who enjoyed immunity from suit, so did the county. *Id.* at 325, 418 A.2d 1173. Ultimately the *James* Court concluded that the terminology used in the Prince George's County charter reflected a "voluntary election by the people of the county to provide for liability on the part of their government notwithstanding the status or personal immunability to suit of the individual agent who commits the tort." *Id.* at 329, 418 A.2d 1173. Later in its opinion, the *James* Court said: "if the complained of conduct is performed by a county representative while acting within the scope of his employment but in a negligent manner, Prince George's County will be subject to suit for the resulting damage, without regard to the fact that the agent had public official immunity." *Id.* at 336, 418 A.2d 1173. Immediately after this statement however, the *James* Court added footnote 15, upon which the State relies in this case. That footnote reads:

By this decision we do not hold or imply that all acts or omissions by government bodies or officials may form the basis for recovery against the authority involved. Even though the statute before us contained no exception for discretionary functions or duties such as that contained in the Federal Tort Claims Act, we (as have a number of our sister states under similar circumstances) recognize that by implication *there are certain discretionary policy-making, planning or judgmental governmental functions which cannot · be the subject of traditional tort liability and thus remain immune from scrutiny by judge or jury as to its wisdom.* Public policy and the maintenance of the integrity of our system of government necessitate such an exception for, in the words of Mr. Justice Jackson, "Of course, it is not a tort for government to govern." Although there is no occasion at this time for us to further delineate this demarcation, for authorities suggesting guidelines in identifying these activities, *see Commercial Carrier Corp. v. Indian River Cty.,* 371 So.2d 1010, 1017–22 (Fla.1979); *Evangelical United Brethren Church v. State,* 67 Wash.2d 246, 407 P.2d 440, 444–45 (1965). *Cf. Frostburg v. Hitchins,* 70 Md. 56, 66–67, 16 A. 380, 381–82 (1889); *Hitchins v. Frostburg,* 68 Md. 100, 109–10, 11 A. 826, 828–29 (1887).

*Id.* at 336, n. 15, 418 A.2d 1173 (emphasis added).

James was decided before the MTCA was enacted. Therefore, had the footnote not been mentioned in *Parker, supra,* it would not, even arguably, have any impact on the resolution of the issue to be here decided. But, as will be discussed *infra,* the footnote was mentioned in Parker, a case that did involve the MTCA.

In *Parker v. State,* Doris Parker sued the State of Maryland under the MTCA for false arrest, false imprisonment, and negligence. 337 Md. at 275, 653 A.2d 436. She also sued, individually, the Honorable Roger W. Brown, based on certain actions he took as a Circuit Court Judge for Baltimore City, and the Clerk, Deputy Clerk, and the Assistant Clerk of the Baltimore City Circuit Court. *Id. Parker* sought to hold

Judge Brown liable in damages for issuing a warrant for her arrest. All defendants filed motions to dismiss.

Judge Brown maintained that he, as a judge, had absolute immunity for his judicial acts. The State alleged that if Judge Brown was immune from suit, the State could not be vicariously liable under the MTCA for his actions. *Id.* at 275, 653 A.2d 436. The circuit court granted the defendants' motion and dismissed the actions with prejudice as to all defendants. *Id.* at 275, 653 A.2d 436. On appeal, Parker did not contest the dismissal of her suit against the court clerks. *Id.* at 276, 653 A.2d 436. She did contend, however, that the case should not have been dismissed as to either Judge Brown or the State.

This Court affirmed the dismissal on the grounds that Judge Brown enjoyed absolute immunity from suit. *Id.* at 276, 653 A.2d 436. The Court of Appeals granted Parker's petition for a *writ of certiorari* to consider whether the MTCA shielded Judge Brown from liability. *Id.* at 276–77, 653 A.2d 436. The parties stipulated on appeal that if Judge Brown was immune from suit, then the State of Maryland would not be liable under the MTCA. *Id.* at 277, 653 A.2d 436.

Almost all of the *Parker* opinion is devoted to proving that judges, unlike other public officials, enjoy *absolute* immunity so long as the judge is sued for judicial acts. As the Court of Appeals pointed out in *Parker,* absolute judicial immunity is much more expansive than the qualified public official immunity under Maryland law that was discussed in *James, supra. Id.* at 285–86, 653 A.2d 436. Ultimately, the *Parker* Court concluded that Judge Brown was entitled to absolute judicial immunity and therefore the lawsuit filed by Parker against him and the State was properly dismissed. *Id.* at 287, 653 A.2d 436.

In reaching that decision, the *Parker* Court included the paragraph, quoted below, upon which the State relies viz:

Furthermore, the *respondeat superior* liability of the governmental employer under a waiver of governmental immunity like the Maryland Tort Claims Act, Code (1984, 1993 Repl.Vol., 1994 Cum.Supp.), §§ 12–101 *et seq.* of the State

Government Article, differs according to the type of immunity available to the public servant whose action gave rise to the civil claim. *The qualified immunity of a public official does not necessarily protect a government employer sued on a theory of respondeat superior. See James v. Prince George's County, supra,* 288 Md. at 336 [418 A.2d 1173] (county's waiver of immunity "makes the county liable for the negligent conduct of all of its employees occurring in the course of their employment, without regard to their status as public officials"). Nonetheless, we have noted in this context that "not all acts or omissions by government bodies or officials may form the basis for recovery against the authority involved," *because "there are certain discretionary policy-making, planning or judgmental governmental functions which cannot be the subject of traditional tort liability and thus remain immune from scrutiny by judge or jury as to [their] wisdom." James v. Prince George's County, supra,* 288 Md. at 336 n. 15 [418 A.2d 1173]. Judicial acts performed by judges are among those governmental functions *that cannot give rise to civil liability in tort.* Accordingly, a suit that is barred by judicial immunity cannot form the basis of a recovery against the State under the Tort Claims Act.

*Id.* at 286, 653 A.2d 436 (emphasis supplied, internal quotations omitted.)

In this appeal the State contends, in essence, that because there are certain "discretionary policy-making, planning or judgmental governmental functions [that] cannot be the subject of traditional tort liability," there can be *no* liability under *any* circumstances when public officials are exercising "discretionary policy-making planning or judgmental governmental functions"—as in this case. That does not follow, and clearly such a broad exemption from the State's waiver of sovereign immunity was not intended by the drafters of the MTCA.

In considering whether the State's position in this appeal has merit, it must be remembered that the MTCA provides that it "shall be construed broadly to ensure that injured parties have a remedy." *See* State Government, section 12–

102. To interpret the MTCA in the manner suggested by the appellees would violate the dictates of section 12–102.

Moreover, the legislative history of the MTCA indicates that the General Assembly did not intend for the State to retain sovereign immunity in cases like the one *sub judice*. As already mentioned, the MTCA, as originally enacted, only waived sovereign immunity as to a relatively few types of actions, but one of the categories of suit allowed was the type of action brought by Mr. Tollenger in the case at hand, i.e., "an action to recover damages caused by defective, *unsafe* or dangerous conditions of any ... highway owned and controlled by the State if constructive or actual notice of the condition existed. . . ." (Emphasis added). *See* Maryland Code (1980, 1981 Supp.,) section 5–403(a)(5) of the Courts & Judicial Procedure Article. The legislature clearly intended to greatly broaden the categories of cases in which immunity was waived when it amended the MTCA in 1984, effective July 1, 1985. Instead of the six categories, sovereign immunity was waived as to tort actions against the State and its units in tort actions filed in Maryland so long as adequate coverage existed and other condition precedents were met. It would make no sense to construe the broad language of section 12–104 of the State Government Article as it now exists, so as to exclude tort actions that were specifically included in the MTCA as originally enacted. At least impliedly, this was recognized in *Card, supra*, where we said that the MTCA waived immunity from tort actions filed in Maryland for, *inter alia*, liability that arises "from the defective condition of State-owned or controlled property, where the tortious conduct of any particular person is not relevant." 104 Md.App. at 447, 656 A.2d 400.

As already mentioned, appellees ask that we read into the MTCA an implied exception. What the Court of Appeals said in *Lee v. Cline*, 384 Md. 245, 256, 863 A.2d 297 (2004), in this regard is instructive:

The current language of the Maryland Tort Claims Act plainly appears to cover intentional torts and constitutional torts as long as they were committed within the scope of state employment and without malice or gross negligence.

There are no exceptions in the statute for intentional torts or torts based upon violations of the Maryland Constitution. *This Court has been most reluctant to recognize exceptions in a statute when there is no basis for the exceptions in the statutory language. See, e.g., O'Connor v. Baltimore County,* 382 Md. 102, 113 [854 A.2d 1191] (2004) ("When interpreting a statute, we assign the words their ordinary and natural meaning. We will not . . . 'judicially insert language to impose exceptions, limitations or restrictions not set forth by the legislature' "); *Nesbit v. GEICO,* 382 Md. 65, 75 [854 A.2d 879] (2004); *Melton v. State,* 379 Md. 471, 477 [842 A.2d 743] (2004); *Salamon v. Progressive Classic Insurance Company,* 379 Md. 301, 311–16 [841 A.2d 858] (2004); *Piscatelli v. Board of Liquor License Commissioners,* 378 Md. 623, 630–33 [837 A.2d 931] (2003); *Blind Industries v. D.G.S.,* 371 Md. 221, 231 [808 A.2d 782] (2002); *Western Correctional Institution v. Geiger,* 371 Md. 125, 142 [807 A.2d 32] (2002).

*Id.* at 256–57, 863 A.2d 297 (internal citations omitted) (emphasis added).

Aside from *James* and *Parker,* both *supra,* the only other cases cited by the State defendants in support of their argument that the MTCA does not waive immunity for the State and its agencies for tort actions "arising from discretionary governmental planning and policy discussions authorized by statute," are *Mayor and City Council of Baltimore v. Whalen,* 395 Md. 154, 159, 909 A.2d 683 (2006), and *Lee v. Cline, supra.*

The *Whalen* case involves a suit against a municipality (Baltimore City) and has nothing whatsoever to do with the MTCA. The issue presented in *Whalen* was whether Baltimore City was entitled to governmental immunity in a tort action in which the plaintiff alleged that the City negligently maintained a park. 395 Md. at 157, 909 A.2d 683. The *Whalen* Court held that the city was immune "when the injury takes place within the boundaries of a public park but outside the boundaries of a public way." *Id.* at 157–58, 909 A.2d 683. The grounds for the court's ruling was that operating a park was "a governmental duty, discretionary in its nature, and

performed in its governmental capacity." *Id.* at 169, 909 A.2d 683. The court distinguished the case before it from other cases that held that a municipality was not immune from suit when the tort suit alleged that the city was negligent in performing proprietary functions such as maintenance of sidewalks, roadways, etc. *Id.* at 162–69, 909 A.2d 683.

In its brief, appellees cite the *Whalen* case for the proposition that sovereign immunity "applies to bar a suit arising from a governmental agency's statutory responsibility to 'maintain, operate, and control a facility, which is a governmental duty, discretionary in its nature, and performed in its governmental capacity.' " The proposition for which appellee cites *Whalen* has nothing whatsoever to do with whether the State has waived its sovereign immunity under the MTCA. *See Proctor, supra,* 412 Md. at 713, 990 A.2d 1048 (the MTCA waives sovereign immunity for the State and its units "for all tort actions, arising out of governmental, proprietary, or other functions, unless specifically excluded by § 5–522(a) of the Courts and Judicial Proceedings Article" . . . .).

*Lee v. Cline, supra, did* involve the MTCA but the case did not in any way concern the issue of whether the State and/or its agencies waived sovereign immunity, because, by the time the *Cline* case was appealed, neither the State nor any State agency was a party. The issues presented in *Cline* were:

> . . . (1) whether the Maryland Tort Claims Act, Maryland Code (1984, 2004 Repl.Vol.), § 12–101 *et seq.* of the State Government Article, provides qualified immunity to state personnel for tort actions based upon violations of the Maryland Constitution, (2) whether the Maryland Tort Claims Act provides qualified immunity to state personnel for tort actions based upon certain common law "intentional" torts, and (3), if the Act does grant such qualified immunity, whether the plaintiff's evidence of malice was sufficient to generate a triable issue as to whether the immunity was defeated.

*Id.* at 284, 863 A.2d 297.

In *Cline* the defendant, Gary Cline, was a Frederick County Deputy Sheriff. 384 Md. at 249, 863 A.2d 297. The discussion

in *Cline*, as to whether the defendant enjoyed public official immunity is completely irrelevant as to the issue in this case, i.e., whether the State has waived its sovereign immunity. This was explicitly stated in *Cline*, viz:

> "The principle of public official immunity is not and has never been, tied to a waiver of sovereign or governmental immunity" under the MTCA.

*Id.* at 261, 863 A.2d 297.

For the reasons set forth above, we hold that in deciding whether the MTCA waived the State's immunity, it is irrelevant whether the person or persons who made the decision not to install the jersey barrier were public officials exercising discretionary functions. *See Cline* and *Proctor*, both *supra*. By the terms of the MTCA, the State waived its immunity from suits (up to $200,000 per claim) if the allegations of negligence set forth in Mr. Tollenger's complaint are proven. Therefore, the motions judge erred in granting summary judgment in favor of the State and its units based on sovereign immunity.

## III.

■ The appellees ask us to rule on the merits of three additional arguments they raised in their summary judgment motion, viz: 1) the appellees, under the public duty doctrine, owed a duty to the public to maintain its highways in a safe condition, but owed no such duty to an individual injured by the dangerous or defective conditions of its highway;[3] 2) even

---

3. Although the issue shall not be decided, we note that the argument of the State defendants seem to be at odds with what the General Assembly intended when it enacted the MTCA. As previously discussed, the initial version of the MTCA explicitly waived immunity for "actions to recover damages caused by defective, unsafe or dangerous conditions of any highway owned or contracted by the State, if constructive or actual knowledge of the condition existed...." That provision clearly indicated that a duty was owed to the individual injured.

Moreover, a long line of Maryland cases have allowed individual suits against municipalities who have failed to fulfill their duty to properly maintain walkways and roads. It would be strange indeed to have a tort system that would recognize the right of an individual to sue a

assuming that the appellees owed a duty to the plaintiffs in this case, they did not breach that duty; and 3) Mr. Tollenger "[c]annot show that actions of the State [d]efendants were the proximate cause of Ashley Tollenger's injuries."

"It is a settled principle of Maryland appellate procedure that ordinarily an appellate court will reverse a grant of summary judgment only upon the grounds relied upon by the trial court." *Bishop v. State Farm Mut. Auto Ins.*, 360 Md. 225, 236, 757 A.2d 783 (2000). The appellees recognized this rule but point out that there is an exception to this rule that allows an appellate court to consider questions that are "inextricably intertwined" with the question decided by the circuit court. *Citing Eid v. Duke*, 373 Md. 2, 11, 816 A.2d 844 (2003). While the exception mentioned by appellees does exist, it is clear that none of the issues raised, but not decided, are in any way "intertwined" with the issue decided by the circuit court. We therefore shall not decide the merits of the three additional grounds raised by appellees, but not decided by the court.

**JUDGMENT REVERSED; CASES REMANDED TO THE CIRCUIT COURT FOR HARFORD COUNTY; COSTS TO BE PAID BY APPELLEES.**

---

municipality for failure to keep roads in a safe condition but exclude suits by individuals who sue the State based on similar allegations on the grounds that the duty to maintain roads in a safe condition is owed to the public generally but not the person injured.